RECEIVED
FEB 1 7 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

MOTION UNDER 28 U.S.C. §2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA
AT ANCHORAGE

| Name of Movant | Prisoner No. | Case No. |
|---|---|---|
| **AARON SHARPE** | **14584-006** | **A03-0034-CR (JMF)** |

Place of Confinement

**FEDERAL CORRECTIONAL INSTITUTION, P.O. Box 34550, Memphis, TN**

UNITED STATES OF AMERICA  vs.  AARON SHARPE

## MOTION

1. Name and location of court which entered the judgment of conviction under attack: **United States District Court for the District of Alaska, at Anchorage**

2. Date of judgment of conviction: **June 11, 2003**

3. Length of sentence: **20 years, 8 months , or, 248 months total**

4. Name of offense involved (all counts): **Count I - Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1); Count II - Possession of a Firearm during and in relation to a Drug Trafficking Offense, in violation of 18 U.S.C. §924(c); and COUNT III - Cultivation of Marijuana, in violation of 21 U.S.C. §843.**

5. What was your plea? (Check One)

   (a) Not Guilty   **xxx**
   (b) Guilty   ‗‗‗
   (c) Nolo Contendere  ‗‗‗

  If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

**N/A**

6. If you pleaded not guilty, what kind of trial did you have? (Check One)

   (a) Jury   **xxx**
   (b) Judge Only  ‗‗‗

7. Did you testify at the trial?

  Yes‗‗‗   No **xxx**

8. Did you appeal from the judgment of conviction?

  Yes **xxx**   No‗‗‗

9.  If you did appeal, answer the following:

    (a) Name of court: **United States Court of Appeals for the Ninth Circuit**

    (b) Result: **Conviction and Sentence Affirmed**

    (c) Date of Result: **May 4, 2005**

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?

    Yes_____    No **xxx**

11. If your answer to 10 was "yes," give the following information:

    (a) (1)  Name of Court:    **N/A**

        (2)  Nature of the Proceeding:    **N/A**

        (3)  Grounds Raised:    **N/A**



        (4) Did you receive an evidentiary hearing on your petition, application or motion?

    Yes_____    No_____    **N/A**

        (5) Result: **N/A**

        (6) Date of Result: **N/A**

    (b) As to any second petition, application or motion give the same information:

        (1) Name of Court:    **N/A**

        (2) Name of Proceeding:    **N/A**


        (3) Grounds Raised:

(4) Did you receive an evidentiary hearing on your petition, application or motion?

_____ Yes   _____ No   **N/A**

(5) Result   **N/A**

(6) Date of result   **N/A**

(c) Did you appeal to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1) First petition, etc.    _____ Yes   _____ No   **N/A**
(2) Second petition, etc.   _____ Yes   _____ No   **N/A**

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

**N/A**

12. State concisely every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement prededed by a letter constitutes a ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

**A. Ground One:** MOVANT'S CONVICTION IS THE RESULT OF AN ENFORCEMENT OF A STATUTE, ENACTED BY CONGRESS, THAT ALTERS AND/OR MODIFIES A PROVISION OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA IN DIRECT CONTRAVENTION OF THE AMENDATORY PRESCRIPTIONS SET FORTH IN ARTICLE V.

Supporting FACTS (state briefly without citing cases or law):

(See Attached Addendum)

**B. Ground Two:** MOVANT'S CONVICTION WAS THE RESULT OF THE TRIAL JURY'S MISUNDERSTANDING OF WHAT PROOF THE GOVERNMENT HAD TO ESTABLISH TO CONVICT MOTION OF COUNTS I AND II OF THE INDICTMENT, WHICH WAS THE RESULT OF HIS HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

Supporting FACTS (state briefly without citing cases or law):

(See Attached Addendum)

**C. Ground Three:** MOVANT'S CONVICTION, AS TO EACH OF THE COUNTS CHARGED IN THE INDICTMENT, WAS THE RESULT OF EVIDENCE OBTAINED THROUGH AN UNCONSTITUTIONAL SEARCH AND SEIZURE, THE INTRODUCTION AND PRESENTATION AGAINST THE MOVANT HAVING BEEN THE RESULT OF HIS HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.

Supporting FACTS (state briefly without citing cases or law):

(See Attached Addendum)

D. <u>Ground Four:</u>  MOVANT'S SENTENCE WAS THE RESULT OF THE TRIAL COURT'S DENIAL OF MOVANT'S SIXTH AMENDMENT JURY TRIAL RIGHTS, WHICH WAS THE RESULT OF MOVANT HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATE OF AMERICA.

**Supporting FACTS (state briefly without citing cases or law):**

(See Attached Addendum)

E. <u>Ground Five:</u>  MOVANT'S CONVICTION AND SENTENCE ARE THE RESULT OF THE ENTRY OF A JUDGMENT BY THE DISTRICT COURT THAT THE COURT DID NOT HAVE COMPETENT JURISDICTION TO ENTER, VIOLATING MOVANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.

**Supporting FACTS (state briefly without citing cases or law):**

(See Attached Addendum)


13.  If any of the grounds listed in 12A,B,C,D, and E were not previously presented, state briefly what grounds were not so presented and give your reasons for not presenting them:

None of the grounds presented in this motion have been previously ruled on by a court of competent jurisdiction.  The reason that such grounds were not previously presented is that Movant received ineffective assistance of counsel for his conviction and sentence, and he had ineffective assistance of counsel on direct appeal.  (See additional information regarding this issue in the addendum pages submitted contemporaneously herewith).

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?  ____Yes  xxx No

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)  At preliminary hearing: **Mr. William Bryson,** address unknown.

(b)  At arraignment and plea:  Same as 15(a) above.

(c)  At trial:  Same as 15(a) above.

(d)  At sentencing :  Same as 15(a) above.

(e)  On Appeal: **Lance Christian Wells, 733 W. Fourth Ave., Suite 308, Anchorage, Alaska 99501.**
(f)  In any post-conviction proceeding:  **N/A**

(g)  On appeal from any adverse ruling in a post-conviction proceeding:

**N/A**

ADDENDUM - **Motion to Vacate, Set Aside or Correct Sentence Filed by a Federal Prisoner Pursuant to 28 U.S.C. §2255**

### Statement of Facts of the Case/Procedural History

On January 10, 2003, a resident of the Rangeview Trailer Court, located at 705 Muldoon Road, Anchorage, Alaska, called the manager of the trailer park to report a water leak coming from the unit occupying Space #186. The manager investigated and verified the report and then attempted to contact the renter of the unit by calling two emergency numbers from the rental application form. When he was unable to make contact with the renter, he tried to gain entry into the unit using a master key. He discovered, however, that the lock had been changed.

Discovering that the lock had been changed and the manager could not gain access to the unit, the manager then contacted a locksmith employed by the trailer park and instructed him to pick the lock on the rental unit and allow him, the manager, access to the interior of the unit. Upon entry, the manager discovered that the entire trailer had been converted into a marijuana "grow" operation. There was plant material located on the kitchen floor. He did not enter the living room area because it was blocked off with a plastic partition, which had a zipper opening. Curious, the manager opened the zipper and peered inside. There, he found the "grow operation" which led to the charges made against the Movant. The manager then contacted the Anchorage Police Department. $\underline{1/}$

After arriving at the trailer park and the unit in issue, members of the Anchorage Police Department made a warrantless entry into the unit. The police then seized the items found inside.

---

1/ The manager had also noticed a shotgun on a closet shelf behind the door near the entranceway.

ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255

(Continued from Page 5(a))...

In addition to dismantling and seizure of the "grow operation" it-
self, fingerprints were "lifted" from various materials used in the
operation and from the 12 guage shotgun found on a shelf near the front
door of the trailer. Subsequent investigation revealed that the trailer
unit in issue had been rented by Movant. A comparison of his fingerprints
revealed that several of the prints found inside the trialer were his.
One fingerprint, purportedly, was lifted from the shotgun found on the
closet shelf near the front door of the unit.

Based on the information stated above, Movant was arrested and
indicted on a variety of charges:  Felon in Possession of a Firearm;
Possession of a Firearm during and in relation to a Drug Trafficking
Offense; and Cultivation of Marijuana.  Following a trial by jury, the
Movant was found guilty of each of the charges made against him.  A
timely notice of appeal was filed and, subsequently, an appeal was taken
to the United States Court of Appeals for the Ninth Circuit. On May 4,
2005, the Ninth Circuit, affirmed Movant's conviction. $\underline{2/}$

This §2255 motion follows the denial of his direct appeal.

---

2/ A §2255 motion is timely if filed within 1 year of the date on which
the conviction becomes final.  There is a 90 day period involved in the
calculation of this limitation period where a direct appeal was filed, to
allow for an attempt at review by the Supreme Court.  The finality date in
this case, for §2255 purposes, is August 4, 2005.

ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255

(Continued from Page 5(b))...

Ground One: MOVANT'S CONVICTION IS THE RESULT OF THE ENFORCEMENT
OF A STATUTE, ENACTED BY CONGRESS, THAT ALTERS, AMENDS, AND/OR MODIFIES
A PROVISION OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA IN DIRECT
CONTRVENTION OF THE AMENDATORY PRESCRIPTIONS SET FORTH IN ARTICLE V.

Supporting FACTS:  In the instant case the Movant was convicted of
being a felon in possession of a firearm in violation of 18 U.S.C. §922
(g)(1).  That provision reads, in pertinent part, as follows:

> (g) It shall be unlawful for any person ——
>
>> (1) who has been convicted in any court of
>> a crime punishable for imprisonment for a
>> term exceeding one year;
>
> to ship or transport in interstate or foreign
> commerce, or possess in or affecting commerce, any
> firearm or ammunition; or to receive any firearm
> or ammunition which has been shipped or transported
> in interstate or foreign commerce.

The plain, and unambiguous language of §922(g)(1) makes clear that
Congress, through legislative action, has outlawed the possession, receipt
and transportation of firearms and ammunition to a specific and identifiable
segment of the populace of the United States.  As Movant will show, and
establish, §922(g)(1) is unconstitutional because it represents an amend-
ment, an alteration, or a modification of a provision of the Constitution
of the United States of America (hereinafter, Constitution) without benefit
of the amendatory process commanded in Article V of the Constitution.

The Second Amendment to the Constitution reads as follows:

> A well regulated Militia, being necessary to the
> security of a free State, the right of the People
> to keep and bear arms, shall not be infringed.

(Emphasis supplied).

Although courts and commentators in the last few decades have

**ADDENDUM – Motion to Vacate, Set Aside or Correct Sentence Filed by a Federal Prisoner pursuant to 28 U.S.C. §2255**

(Continued from Page 5(c))...

differed on the reach of the Second Amendment, there can be no doubt **today** that the Justice Department, and the Courts, recognize the amendment refers to an individual right.  See United States v. Emerson, 270 F.3d 203 (5th Cir. 2001); United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990); and, see Federal Firearms Legislation Violates Article V of the Constitution of the United States of America, Gary William Holt, 2002 (a copy of which is attached hereto as Movant's Exhibit A). $\underline{1/}$

Because the Second Amendment guarantees an individual right to keep and bear arms, and because it contains a prohibitory clause (...shall not be violated), §922(g)(1) amends, alters, or modifies the amendment.  In other words, with the enactment of §922(g)(1), Congress has taken on the position that the Second Amendment means that the right to keep and bear arms shall not be violated except that Congress chooses to enact legislation that changes it.  Congress also reads the guarantee clause to mean that the right shall not be violated except that Congress chooses to enact legislation that changes it.

What Congress overlooked in the enactment of §922(g)(1) is the fact that it has no authority, except through the amendatory clause of Article V, to alter, amend, or modify the Constitution, any provision of it, or to enact legislation that interprets the provision to read as Congress may desire it o read.  Thus, §922(g)(1) is unconstitutional because it consti-

---

3/ See the letter attached at the end of the booklet from John Ashcroft, then Attorney General of the United States, to James Jay Baker of the National Rifle Association (NRA).

Page 5(d)

**ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a Federal prisoner pursuant to 28 U.S.C. §2255**

(Continued from Page 5(d))...

tutes an amendment to the Second Article in Amendment to the Constitution by legislative enactment without benefit of the amendatory clause contained in Article V. Article V forbids such legislative amendments, alterations, or modifications to the Constitution and, strips Congress of the authority to make such amendments. Only when the People ratify such a change, as re- quired in Article V, may an alteration to a right embedded in the Consti- tution be made and enforced.

Because 18 U.S.C. §922(g)(1) constitutes a legislative amendment to the Second Amendment to the Constitution, which is forbidden under Article V, it is void and has no legal force or effect whatsoever. Therefore, the Movant's conviction under the provision is void. An individual cannot be penalized for conduct that is clearly authorized by the Constitution on premise of a legislative enactment that is not authorized by the Constitu- tion. The conviction and sentence, received by the Movant, for having violated 18 U.S.C. §922(g)(1), must be vacated.

For all of the reasons set forth herein-above, Movant's conviction and sentence, under 18 U.S.C. §922(g)(1), should be vacated and set aside and the charges made under the enactment discharged.

Furthermore, to the extent that the Government may argue that Movant procedurally defaulted this ground for relief by failing to raise the issue at some earlier time, Movant equates such default to the ineffective- ness of his trial attorney. Counsel should have known, there being an assumption that he knows the law, that Congress may not enact legislation that alters, amends or modifies the Constitution except through the

Page 5(e))...

ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255

(Continued from Page 5(e))...

amendatory process prescribed in <u>Article</u> V and, that §922(g)(1) consti-
tutes a violation of that provision.  In the alternative, the claim is so
novel, because it has never been previously decided on its merits, as to
excuse the default.

    <u>Ground Two</u>:  MOVANT'S CONVICTION WAS THE RESULT OF THE TRIAL JURY'S
MISUNDERSTANDING OF WHAT PROOF THE GOVERNMENT HAD TO ESTABLISH TO CONVICT
MOVANT OF COUNTS I AND II OF THE INDICTMENT, WHICH WAS THE RESULT OF HIS
HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION
OF THE FIFTH AND SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
OF AMERICA.

    <u>Supporting FACTS</u>:  As the trial record reveals, the only evidence in
this case, linking Movant to the firearm in issue, was a fingerprint pur-
portedly found on the firearm that purportedly proved to be that of the
Movants.  However, there was no evidence as to when the fingerprint came
to be placed on the firearm and, therefore, no evidence to establish that
Movant possessed the firearm at some time after he became a convicted
felon.

    While the evidence at trial alluded to the fact that Movant had
previously been convicted of a felony offense and, that he was the person
who had rented the mobile home where the firearm was found and, while
this evidence may have suggested that Movant had possession of the fire-
arm at some time after he became a convicted felon, without judicial notice
of the fact that the rental had occurred at some later date and, that the
shotgun had been placed at the location by Movant at some later date, the
evidence did not establish actual or constructive possession of the
firearm by the Movant.

Page 5(f)

**ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255**

---

(Continued from Page 5(f))...

To establish that Movant violated 18 U.S.C. §922(g)(1), the Govern-
ment had to prove the Movant possessed the firearm in issue at some time
after he became a convicted felon, as that term is understood for purposes
of §922(g)(1).  The Government failed to prove this fact and counsel for
the Movant made no issue of it.  Indeed, as the record reveals, there is
no evidence as to when the shotgun in issue was placed in the trailer,
that Movant placed the shotgun in the trailer, or that such placement took
place after Movant became a convicted person and a person disqualified to
possess a firearm.  Counsel's failure to raise these issues to the jury
allowed the Government to mislead the jury with respect to when the
fingerprint was placed on the firearm and when Movant actually possessed
the firearm.  Had counsel made an issue of this point, it is probable
the jury would have acquitted Movant of the offense charged against him
under §922(g)(1).  Thus, counsel's ineptness resulted in a violation
of Movant's Sixth Amendment right to effective assistance of counsel for
his defense.

**Ground Three: MOVANT'S CONVICTION, AS TO EACH OF THE COUNTS CHARGED
IN THE INDICTMENT, WAS THE RESULT OF EVIDENCE OBTAINED THROUGH AN UNCONSTI-
TUTIONAL SEARCH AND SEIZURE, THE INTRODUCTION AND PRESENTATION AGAINST THE
MOVANT HAVING BEEN THE RESULT OF HIS HAVING HAD INEFFECTIVE ASSISTANCE OF
COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO
THE CONSTITUTION OF THE UNITED STATES OF AMERICA.**

**Supporting FACTS:** For purposes of this ground for relief, Movant
incorporates herein each and everything contained in the "Statement of
Facts of the Case/Procedural History" presented at pages 5(a) and 5(b).
By this reference, those things are incorporated as though each was

Page 5(g)

**ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255**

(Continued from Page 5(g))...

reprinted here verbatim.

The Fourth Amendment to the Constitution of the United States of

America, provides that

> The right of the people to be secure in
> their persons, houses, papers, and effects,
> against unreasonable searches and seizures,
> shall not be violated, and no Warrants shall
> issue, but upon probable cause, supported by
> oath or affirmation, and particularly describing
> the place to be searched, and the persons or
> things to be seized.

The amendment was a reaction to the evils of the use of both the

general warrant in England, under which customs officials were given

blanket authority to conduct general searches for goods imported into

the colonies in violation of the tax laws of the Crown, and the writs of

assistance in the colonies, and was intended to protect against invasions

of the sanctity of a man's home and the privacies of life. Thus, it was

designed to prevent, not simply to redress, unlawful police actions.

Constitutional guaranties against unreasonable searches and seizures

are to be liberally construed in favor of the individual to safeguard the

right of privacy. It marks the right of privacy as one of the unique

values of our civilization. As the security of one's privacy against

arbitrary intrusion by the police is at the core of the Fourth Amendment,

it constitutes a fundamental value which law enforcement officers must

respect.

A search within the meaning of the Fourth Amendment occurs when an

expectation of privacy that society is prepared to consider reasonable

is infringed.

**Page 5(h)**

**ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a Federal Prisoner pursuant to 28 U.S.C. §2255**

(Continued from Page 5(h))...

While the Fourth Amendment does not forbid searches without warrants, but rather precludes only unreasonable searches, a search of private property must be performed pursuant to a properly issued warrant, provided a search is to occur and that no exception to the warrant requirement exists.

The search and seizure in issue in the instant case clearly falls within the scope of the Fourth Amendment. Although the initial search was conducted by a private individual, who is not restrained by the Fourth Amendment, once the private party notified police and police entered the property to conduct their own search and to seize items found there, the Fourth Amendment is implicated. Thus, a warrant was required at the time of the search conducted by the police.

First, it should be noted that Movant had an expectation of privacy in the trailer. Although the property was rental property, his rent was current and there was no evidence that he had abandoned the property. Second, to solidify his expecation of privacy, Movant changed the locks on the rental unit. Thus, he expected more privacy in his rental unit than is exhibited by the normal renter. Once the landlord "broke" into the rental unit and made the discovery of the marijuana grow set up, and reported his find to the police, the taint to Movant's privacy expectation had already occurred. Police intensified the taint when, after being notified of the circumstances surrounding the discovery by the landlord, they failed to seek a search warrant to enter the premises themselves. Rather, they relied upon the consent of the landlord to

Page 5(i)

**ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255**

---

(Continued from Page 5(i)...

enter the property without a warrant.  Generally, however, the owner of

rented property has no authority to consent to a search of the premises.

Merely because a landlord has some contractual right to entry a rental

unit doe not alter this rule since  a  person who confers a right to

enter an area, without conferring an equal or similar right to the use

or enjoyment of that area, does not authorize the other to consent on his

behalf to a search by law enforcement authorities.

The search and seizure conducted in this case was inconsistent with

the Fourth Amendment.  It was not conducted as the amendment requires.

Indeed, every conceivable protection of Movant's privacy expectations was

eroded.  Had counsel for the Movant investigated the law of the issue,

and recognized that Movant's changing of the lock created a greater ex-

pectation of privacy than was equated to the situation when suppression of

the evidence seized was considered, counsel could have been successful at

establishing that all the evidence against the Movant was, and is, fruits

of the poisonous tree.  Counsel failed to properly investigate the law

regarding this vital issue and was negligent in not recognizing the

fact that the changing of the lock on this rental unit made the private

search and the police search that followed, fall under a different

spectrum of the Fourth Amendment glass.

Counsel's representation did not meet the reasonableness standard

required to satisfy the Sixth Amendment, was inept, negligent, and clearly

ineffective.  Because Movant was prejudiced by the ineffectiveness, he

is entitled to have his conviction and sentence set aside and to have

ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255

---

(Continued from Page 5(j))...

the Fourth Amendment issue readressed by the Court.  Clearly, the evidence

in this case should have been suppressed and counsel's ineptness was the

cause for such evidence having not been suppressed.  Counsel engaged in

no investigative tasks or he would have known what Movant conveys to the

court today.

For all of the reasons set forth herein-above, Movant's conviction

and sentence should be vacated and/or set aside because he was denied the

effective assistance of counsel guaranteed by the Sixth Amendment.

**Ground Four:** MOVANT'S SENTENCE WAS THE RESULT OF THE TRIAL COURT'S
DENIAL OF MOVANT'S SIXTH AMENDMENT JURY TRIAL RIGHTS, WHICH WAS THE RESULT
OF MOVANT HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN
VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED
STATES OF AMERICA.

For purposes of economy, Ground Four and Ground Five will appear
here together.

**Ground Five:** MOVANT'S CONVICTION AND SENTENCE ARE THE RESULT OF THE
ENTRY OF A JUDGMENT BY THE DISTRICT COURT THAT THE DISTRICT COURT DID NOT
HAVE COMPETENT JURISDICTION TO ENTER, VIOLATING MOVANT'S DUE PROCESS
RIGHTS UNDER THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES
OF AMERICA.

Supporting FACTS (as to Grounds Four and Five):

First and foremost, at the time of Movant's sentencing, and the

entry of the judgment against him, the district court drew it's

authority from 18 U.S.C. §3553(b)(1), which mandated that the district

court impose a sentence under the United States Sentencing Guidelines.

No other sentence was "authorized," and the maximum penalty "authorized"

was the Guideline range applicable to the offense of conviction. This

was the law at the time of the commission of the offense and, the law

Page 5(k)

ADDENDUM - Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal prisoner pursuant to 28 U.S.C. §2255

(Continued from Page 5(k))...

at the time of sentencing. Indeed, no other authority to sentence the
Movant was given by law, nor authorized by Congress.

On January 12, 2005, in the case of United States v. Booker, the
Supreme Court struck down §3553(b)(1) as being unconstitutional because
the provision, according to the Supreme Court, commanded a process that
denies defendants of their Sixth Amendment jury trial rights. The
decision was premised upon the fact that, by mandating application of
the Guidelines, the district court was required to apply the enhance-
ment provisions on facts found post-jury-verdict by the district court.
This process the Court found was inconsistent with due process of law
and deprived defendants' of their jury trial rights.

Because due process forecloses post-jury-trial fact-finding missions
improper, for the purpose of determining the severity of the offense or
the penalty to which the defendant may be exposed, the authorized sentence
applicable here was the Guideline range sentence found within the range
determined on facts charged in the indictment, submitted to the jury,
and made a part of the jury verdict. Thus, the penalty to which the
Movant could be subjected was the range applicable to his offense before
any additional facts were added. Following Booker, even this assumption
changed as the Supreme Court, in striking down §3553(b)(1) struck down
the "only" authority the district court had to impose a penalty at all
on the Movant. This complicates matters here quite well.

In this case, not a single count of the indictment "authorized"
a Guideline range above level 24, Criminal History Category IV. Thus,

**ADDENDUM – Motion to Vacate, Set Aside or Correct Sentence Filed by a Federal Prisoner pursuant to 28 U.S.C. §2255**

(Continued from Page 5(1))...

the maximum penalty applicable to Movant's offense(s) was a total of 96 months. (Guideline range: 77-96 months)  Only by application of facts, found post-jury-verdict by the district court, pursuant to the authority derived "solely" from §3553(b)(1), did the penalty rise.  The statute, however, that led to the penalty to which Movant was exposed, was as unconstitutional at the time of Movant's trial as it was on January 12, 2005 and, therefore, the authority acted upon by the district court was void.  There having been no authority for the district court to impose the penalty received by the Movant, nor to enter the judgment, except that the Court derive said authority from an unconstitutional enactment of Congress (§3553(b)(1)), the judgment entered in this case is void and Movant is entitled to have his conviction and sentence set aside and to have the charges made against him dismissed.  In the alternative, he is entitled to be resentenced and to be sentenced to a term no greater than 96 months, the maximum penalty applicable to the offense charged against him and the offense for which his jury found him guilty.

Because counsel failed to investigate the law and recognize the unconstitutionality of §3553(b)(1), and because counsel allowed the Movant to be exposed to the penalty which the court imposed upon him, without even a hint of an objection on the premise that the authority of the court was derived from an unconstitutional provision in law, counsel failed to provide Movant with the effective assistance he was entitled under the Sixth Amendment and Movant was prejudiced by it.

For all of these reasons, the conviction and sentence of the

**ADDENDUM – Motion to Vacate, Set Aside or Correct Sentence Filed by a
Federal Prisoner pursuant to 28 U.S.C. §2255**

---

**(Continued from Page 5(m))...**

Movant should be set aside.

It should be noted that counsel's ineffectiveness is determined
under a two prong test:  (1) Was counsel's representation within the
reasonable standard of professionalism required to meet constitutional
standards; and (2) was the Defendant prejudiced by counsel's errors?
Here, both prongs of the test have been satisfied.  Counsel's represen-
tation clearly fell below a standard of reasonableness, when counsel was
unaware of the fact that §3553(b)(1) commanded a process inconsistent
with the Sixth Amendment, and Movant was prejudiced by the errors because
he was exposed to a penalty greater than the maximum penalty authorized
for his offense.  As the Supreme Court said in <u>Glover v. United States</u>,
even one day of unjust and unwarranted imprisonment constitutes a grave
miscarriage of justice.  Here, the undeserved and unwarranted term of
imprisonment far exceeds the one day mentioned in <u>Glover</u>.  The sentence
imposed on Movant is five to six times the maximum penalty authorized
for his offense.


<u>MOVANT RESERVES THE RIGHT TO AMEND HIS §2255 MOTION</u>

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?

xxx Yes ____ No

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

____ Yes  xxx No

(a) If so, give name and location of court which imposed sentence to be served in the future:

**N/A**

(b) Give date and length of the above sentence:

**N/A**

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

____ Yes  xxx No

**WHEREFORE,** Movant prays that this Court grant him  all relief he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on _____ 2/4 _____, 2006.

_____
Signature of Movant

FEDERAL FIREARMS LEGISLATION
VIOLATES ARTICLE V OF
THE CONSTITUTION OF THE UNITED STATES OF AMERICA

By: Gary William Holt
Member-Constitutional Legal Advocates, Inc.

***** The Constitution is the Supreme Law of the Land *****

Claim: CONGRESS EXCEEDED ITS AUTHORITY, IN DIRECT CONTRAVENTION OF THE AMENDATORY PRESCRIPTIONS OF ARTICLE V, OF THE CONSTITUTION FOR THE UNITED STATES OF AMERICA, WHEN IT ENACTED TITLE 18, UNITED STATES CODE, SECTION 922(g)(1), AND OTHER PROVISIONS OF THE NATIONAL FIREARMS ACT OF 1934 AND THE FIREARMS OWNERS' PROTECTION ACT OF 1986, ON THE PREMISE THAT AUTHORITY DERIVED UNDER THE COMMERCE CLAUSE, ARTICLE I, SECTION 8, BECAUSE SUCH LEGISLATION CONSTRUCTIVELY AND EFFECTIVELY AMENDS THE SECOND ARTICLE IN AMENDMENT, WITHOUT RATIFICATION BY THE PEOPLE AS REQUIRED IN THE AMENDATORY PROCESS.

Article V, of the Constitution of the united States of America ratified anno domini 1789 - as amended anno domini 1791, provides as follows:

"The Congress, whenever two thirds of both Houses shall deem it necessary, shall pro-pose Amendments to this Constitution, or on Application of the Legislatures of two thirds of the several States, shall call a Convention for proposing Amendments, which in either Case, shall be valid to all in-tents and Purposes, as Part of this Con-stitution, when ratified by the Legisla-tures of three fourths of the several States, or by Convention in three fourths thereof, as the one or the other Mode of Ratification may be proposed by the Con-gress; Provided that no Amendment which may be made prior to the Year One thousand eight hundred and eight shall in any Manner affect the first and fourth Clauses in the Ninth Section of the first Article; and that no State, without its Consent, shall be deprived of its equal Suffrage in the Senate."

(emphasis supplied).

1

The Constitution of the United States of America went into effect on March 3, 1789. Accord, Owings v. Speed, 5 Wheat 420, 5 L.Ed 124, 18 U.S. 420 (1820). It was presided and established not by the States or federal governments in their sovereign capacities, but by the People of the United States, Martin v. Hunter's Lessee, 1 Wheat 304, 4 L.Ed 97, 14 U.S. 304 (1816). Indeed, to emphasize this fact, the "Preamble" stresses that "... We the People... do ordain and establish this Constitution..."

By the Constitution, a nation of people was brought into being, Kansas v. Colorado, 206 U.S. 46, 27 S.Ct. 655, 51 L.Ed 956 (1907).

The Constitution was not erected without a contest. Indeed, many bitter battles arose regarding what should, or should not, be included, or excluded from the text of it. During the struggle, critics leaned on the omission from the draft of a Bill of Rights. It was the peoples' liberties for which the founders feared and sometimes died to secure. The Encyclopedia Americana, International Edition (1980), pages 659, 660. Afraid that the ideology of a central government would otherwise fail, a compromise between the various factions was reached and a Bill of Rights was drafted and added to the Constitution. Id. These, the "Bill of Rights", are found in the first 10 articles in amendment and, they represent exclusive limitations (restrictions) upon the federal power which are intended to prevent interferences with the rights of the States and of their citizens, Fox v. Ohio, 5 How. 410, 12 L.Ed. 213, 46 U.S. 410 (1847), and to secure certain common law rights of the People against invasion by the Federal government. Bell v. Hood, 71 F.Supp. 813, 816 (1947).

The purpose of the Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials, and to establish them as legal principles to be applied by the Courts, American Civil Liberties Union of New Jersey v. Black Horse Pike Regional Board of Education, 84 F.3d 1471, 109 Ed.Rptr. 1118 (3rd Cir. 1996). They were intended to protect the citizen against government infringements of certain fundamental, substantial and inalienable rights held to be necessary to keep the government responsible and under rule of the people and of other rights, liberties, privileges and immunities felt to be necessary as a means of protection against oppressive governmental and legal proceedings; thus, the first ten articles in amendment provided that: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, Doe v. Phillips, 81

2

3d 1204 (2nd Cir. 1996), cert. denied, 117 S.Ct. 1244, 137 L.Ed.2d 326 (1997), or abridging the freedom of speech or the press, Mills v. State of Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484, 1 Media L.Rep. (BNA)(1966), or of the right of the people to assemble and petition the government, Creek v. Village of Westhaven, 80 F.3d 186 (7th Cir. 1996), reh'g denied (April 26, 1996), and cert. denied, 117 S.Ct. 180, 136 L.Ed.2d 120 (1996); LeBlanc-Sternberg v. Fletcher, 781 F.Supp. 261 (S.D.N.Y. 1991); that the right to keep and bear arms shall not be infringed, Miller v. Texas, 153 U.S. 535, 14 S.Ct. 874 (1894); and it provides against the quartering of soldiers, Miller v. Texas, supra; against unreasonable searches and seizures, Weeks v. United States, 232 U.S. 383, 58 L.Ed. 652, 34 S.Ct. 341 (1914); against excessive bail, Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); reh'g denied 343 U.S. 988, 72 S.Ct. 1069, 96 L.Ed. 1375 (1952); against cruel and unusual punishments, Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Fierro v. Gomez, 865 F.Supp. 1387 (N.D.Cal.1994), aff'd 77 F.3d 301 (9th Cir. 1996); against double jeopardy, United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), against compelled self-incrimination, Hill v. Beyer, 62 F.3d 475 (3rd Cir. 1995); against deprivation of life, liberty or property without due process of law, Washington v. Glucksberg, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Skinner v. City of Miami, Fla., 62 F.3d 344 (11th Cir. 1995); reh'g and suggestion for reh'g denied, 91 F.3d 164 (11th Cir. 1996); and, against the taking of property for public use without just compensation, Lynch v. United States, 292 U.S. 571, 78 L.Ed. 1434, 54 S.Ct. 840 (1931).

Further, the first 10 articles in amendment provide for the preservation of the right of trial by jury, Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed 1045 (1930); Galloway v. United States, 319 U.S. 372, 87 L.Ed 1458, 63 S.Ct. 1077 (1943); and the right to presentment or indictment of a grand jury, Apprendi v. New Jersey, 530 U.S. ___, 147 L.Ed.2d 435, 120 S.Ct. ___ (2000); they accord the right to one accused of crime to a speedy and public trial by an impartial jury of the State and district, Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); of the right to be informed of the nature and cause of accusation, Jones v. United States, 526 U.S. 227 (1999); of the right to be confronted with the witnesses against him, Valdez v. United States, 244 U.S. 432, 37 S.Ct. 725, 61 L.Ed 1242 (1917); of the right to have compulsory process for obtaining witnesses in favor of the defense, Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); and of the right to have the assistance of counsel for his defense. Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct.

3

2574, 91 L.Ed.2d 305 (1986); United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). They also specify that the enumeration in the Constitution of certain rights is not to be construed to deny or disparage other rights retained by the people. 1/ See Beyond Penumbras and Emanations: Fundamental Rights, the Spirit of the Revolution, and the Ninth Amendment, Marks, 5 Seton Hall Const. L.J. 435, Spring 1995. The last of the first 10 articles in amendment or, more appropriately, the last of the "Bill of Rights" explicitly provides that not all rights of the people are enumerated and that unspecified powers are reserved to the States or to the people. Koog v. United States, 79 F.3d 452 (5th Cir. 1996); United States v. Term Limits, Inc., 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995).

As referenced above, the "Bill of Rights," or the first articles in amendment to the Constitution of the United States of America-ratified anno domini 1789-as amended- were adopted after the Constitution itself had been adopted and, were insisted upon to quiet apprehension of many that without such a declaration of rights, the government would assume and might be held to possess, the power to trespass upon those rights of persons and property which by the Declaration of Independence were affirmed to be inalienable rights. See Cleveland Bd. of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52, 67 Ohio Ops.2d 126, 6 Fair Empl.Prac.Cas. (BNA) 1253, 7 Empl.Prac.Dig. (CCH) ¶9072 (1974). Thus, it is said that the first articles in amendment limit the powers of the federal government. Sciolino v. Maine Midland Bank Western, 463 F.Supp. 128 (W.D.N.Y. 1979).

Article V, better known as the "amendatory process clause," was construed into the original Constitution to provide for a procedure to allow for amendments to the Constitution as the people may, from time to time, deem necessary. An examination of Article V discloses that Congress was given a wide range of power in proposing amendments, - one, that the article subjects this power to only two restrictions, - one, that the proposal shall have the approval of two-thirds of both Houses, and the other, that it excludes any amendment which will deprive any State, without its consent, of its equal suffrage in the Senate. See Dillon v. Gloss, 41 S.Ct. 510, 256 U.S. 368, 65 L.Ed. 994 (1921). No other means for amendment were adopted.

1/ Significantly, the use of the word "People" here indicates that the term was intended and understood to mean "citizens." United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990)(plurality opinion)(like the first and fourth amendments, the second amendment protects the rights of the people, which the Supreme Court has noted is a term of art that should be interpreted consistently throughout the "Bill of Rights.").

An example of the reach of the amending authority can be seen in Tomoyo Kawakita v. United States, 343 U.S. 717, 96 L.Ed. 1249 (1952), reh'g denied 73 S.Ct. 950, 344 U.S. 850, 97 L.Ed. 660, where it was held that the crime of treason cannot be modified or altered but can only be taken out of the Constitution by processes of amendment. Due to the fact that a clause in the Constitution must be given full force and effect throughout the unbroken King v. Mullins 171 U.S. 404, 18 S.Ct. 925, 43 L.Ed. 214 (1898), and the clear, unambiguous command of the amendatory clause, nothing new can be put into the Constitution except through the amendatory process, and nothing old can be taken out except through the same process. Ullman v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 1008, 100 A.L.R.2d 1456 (1956). Another example is the National Prohibition Cases, where it was held that the prohibition, then in effect, could not be altered or modified by legislative enactments which sanction what the prohibition amendment prohibited. Rhode Island v. Palmer, 253 U.S. 350, 40 S.Ct. 486, 64 L.Ed. 946 (1920).

Basically, the purpose for Article V was to keep the government honest, to keep what was sacred to the framers free of abuse, and to prevent the will of the representatives from overriding the will of the people, thereby, allowing the representatives to rewrite the Constitution to serve their own interests2/ Federalist, No. 78 (Hamilton). In the Federalist No. 78, Hamilton wrote:

"It is not otherwise to be supposed that the Constitution could intend to enable the representatives of the people to substitute their will to that of their constituents...

"Though I trust the friends of the proposed Constitution will never concur with its enemies in questioning that fundamental principle of Republican government which admits the right of the people to alter or abolish the Constitution whenever they find it inconsistent with their happiness; yet it is not to be inferred from this principle that the representatives of

2/ In more recent years Congress has all but forgotten this principle. Politicians have, because of special interest group pressures, asserted their will into legislation over the will of the people on numerous occasions. The Nuclear Waste disposal legislation is one example. Although Congress has tried to enact legislation that constructively amends the Constitution, when the practice has been brought before the judiciary, their efforts have, for the most part, failed on every occasion.



Gary William Holt
2002

the people, whenever momentary inclination happens to lay hold of a majority of their constituents incompatible with the provisions in the existing Constitution would, on that account, be justifiable in a violation of those provisions; or that the Courts would be under a greater obligation to connive at infractions in this shape than when they had proceeded wholly from the cabals of the representative body. Until the people have, by some solemn and authoritative act, annulled or changed the established form, it is binding upon themselves collectively, as well as individually, and no presumption, or even knowledge of their sentiments, can warrant their representatives in a departure from it prior to such act. But it is easy to see that it would require an uncommon portion of fortitude in the judges to do their duty as faithful guardians of the Constitution, where legislative invasions of it had been instigated by the major voice of the community."

(emphasis supplied). _3/

7

Thus, the idea prevails that any attempt to revise the Constitution, or to adopt a new one, in a manner except as provided for in Article V, is invariably treated as extraconstitutional and revolutionary. Taylor v. Beckham, 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900). It is not the function of the legislative or judicial bodies, national or state, to alter the method or ratification of amendments to the Federal Constitution, which the Constitution has fixed. Hawke v. Smith, 253 U.S. 221, 40 S.Ct. 495, 10 A.L.R. 150, 64 L.Ed. 871 (1920). 4/ We have learned from observation of other

3/ It is an accepted principle that the Federalist Papers, which included the handiwork of three eminent statesmen, two of whom were members of the convention which framed the Constitution, hold considerable weight in determining the meaning of the Constitution. Loving v. United States, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); United States v. Vargas, 885 F.Supp. 504 (S.D.N.Y. 1995).

4/ This would include sanctioning Congress to enact legislation that has

6

governments that a government that authorizes the will of the elected, or appointed, representatives to modify the foundation, and principles, upon which a government of the people, by the people, and for the people was founded, without the people's consent, insinuates a form of tyranny that usurps the liberty of the people and emancipates the government into an oligarchy that rides unrestricted over the rights of the people. The free exercise of the rights, liberties, privileges, and immunities, guaranteed in the Constitution, is a basic tenet of our constitutional democracy and, the Constitution, of which the people, themselves, found necessary to put into effect, cannot be changed by any legislative definition, or other provision, in a new statute. See e.g., Collins v. Mills, 198 Ga. 18, 30 S.Ed. 866 (1944); Downes v. Bidwell, 182 U.S. 244 (1901)(Congress may not enact legislation that amend the Constitution except through the amendatory process of Article V). Further, it [the Constitution] may not be amended by either case law or rules of the Court. Campbell v. State, 658 So.2d 1345 (Miss. 1995), reh'g denied (August 3, 1995). Indeed, in situations where a constitutional right has been abrogated by a statute, the former prevails. Gray v. Mississippi, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987). Also see: Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 10 A.L.R.3d 974, 16 L.Ed.2d 694 (1966). All laws which are repugnant to the Constitution are null and void. Marbury v. Madison, 5 U.S. 137, 174-76 (1803).

History, without question, is clear that the first ten articles in amendment to the Constitution were adopted to secure certain common law rights of the people against invasion by the federal government. Bell v. Hood, 71 F.Supp. 813, 816 (1947). These rights, as early a decisional law depicts, may not be denied simply because of hostility toward their assertion. Watson v. Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963). Cox v. Louisiana, 379 U.S. 536, 13 L.Ed.2d 471, 85 S.Ct. 453 (1965), they may not be made to yield to mere convenience. Weaver v. Palmer Bros. Co. 270 U.S. 402, 46 S. Ct. 320, 70 L.Ed. 654 (1926) and they extend to those with notorious reputations as well as those who are models of upright citizenship. Smith v. United States, 423 U.S. 1303, 96 S.Ct. 2, 46 L.Ed.2d 9 (1975). As stated earlier herein, where these

the effect of constructively amending a provision of the Constitution, as such action represents an intentional by-pass of the requirements of Article V. The methods to amend the Constitution set forth in Article V, requiring ratification by the legislatures of three-fourths of the States, or by Convention, are exclusive. [Per Rehnquist, J. as Circuit Judge] Kimble v. Swackhamer, 439 U.S. 1385, 1385, 99 S.Ct. 51, 58 L.Ed.2d 225 (1978).

8

rights are involved, there can be no rulemaking or legislation which would abrogate them, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 10 A.L.R.3d 974, 16 L.Ed.2d 694 (1966). Indeed, no matter how compelling the reasons, no matter how pure the motive, constitutional protections for individuals - even unsympathetic ones - cannot be cast aside in the name of the greater good. Doe v. Pataki, 919 F.Supp. 691, 693 (S.D.N.Y. 1996).

Certain provisions of the "Bill of Rights" are couched in such unqualified and absolutely prohibitory terms that it is not open to debate that it is fundamental and outside the reach of the government. Accord: Knox v. Lanham, 895 F.Supp. 750 (D.Md. 1995). They were intended to limit the power of the government, Scolino v. Maine Midland Bank Western, 463 F.Supp. 128 (W.D.N.Y. 1979), and where the provision includes a mandate that the right prescribed within the provision shall not be infringed, it is not otherwise supposed that anything to the contrary was intended or can be implied. Accord: State v. Yardy, 95 Tenn. 546, 32 S.W. 481 (1895)(prohibitory language stated in the Constitution must always be construed as mandatory). Also see: State on inf. of Dalton v. Dearing, 364 Mo. 475, 263 S.W.2d 381 (1954)(prohibitory provisions in a Constitution are self-executing to the extent that anything done in violation of them is void).

The Second Article in Amendment (the Second Amendment) reads:

   "A well regulated Militia, being necessary to the security of a free State, the right of the People to keep and bear arms, shall not be infringed."

(Emphasis supplied).

This amendment, interpreted in the light of the legal existence and history of its adoption [Mattox v. United States, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1985); in re Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1888)(in construing the language of the Constitution, the Court should place itself as nearly as possible in the condition of the men who framed the instrument); Lynch v. Donnelly, 465 U.S. 668,

9

5/ As used in other provisions, the second article in amendment is couched in terms of the right of the People, which is interpreted as the right of the citizen or individual to keep and bear arms. United States v Verdugo-Urquidez, 494 U.S. 259, 265 (1990)(plurality opinion).

104 S.Ct. 1355, 79 L.Ed.2d 604 (1984)(Constitutional decision of the first Congress are the greatest weight in the interpretation of the Constitution). Although courts and commentators in the last few decades have offered three different interpretations of the Second Amendment, there is no doubt today that the Justice Department, and the Courts, recognize the argument that the amendment refers to an individual right, is the persuasive one. Thus, the plain meaning of the right of the People to keep and bear arms is that it is an Individualized right. See United States v. Emerson, 270 F.3d 203 (5th Cir. 2001).

Both words, keep and bear, as used in the Second Amendment, entertain the term possess.

Keep, 1. To retain possession of......
(Webster's II, Riverside University-Dictionary, 1988, Riverside Publishing Co.)

Bear, 7. To carry in a particular way..
(Webster's, supra).. 6/

Thus, one possessing a firearm is consistent with the liberty accorded him under the Second Amendment. This interpretation also runs consistent with the Federalist's views. See e.g., Johnathan Elliot, The Debates in the Several State Conventions on the Adoption of the Federal Constitution (2d ed. 1836). Similarly, accord Cooley, General Principles of Constitutional Law (Little, Brown, 1880; 1981 Rothman & Co. reprint).

Because the Second Amendment (second article in amendment) has a prohibitory provision, it is clear that nothing may be done by the government in derogation of that amendment's intent, nor to disparage or deny the right contained therein to every citizen. Knox v. Lanham, supra, even where there is hostility to their exercise. Cox v. Louisiana, 379 U.S. 536, 13 L.Ed.2d 471, 85 S.Ct. 453 (1965). Indeed, where the intention of a constitutional provision is clear, there is no room for construction, and no excuse for interpolation or addition. United States v. Sprague, 282 U.S. 716, 51 S.Ct. 220, 71 A.L.R. 1381, 75 L.Ed. 640 (1931). Nothing could be more clear than the prohibitory language, "shall not be infringed," found in the Second Amendment. 7/

6/ Words and phrases used in the Constitution were used in their normal and ordinary sense. United States v. Sprague, 282 U.S. 716, 51 S.Ct. 71 A.L.R. 1381, 75 L.Ed. 640 (1931)

7/ The term certainly cannot be construed to mean, "except under certain circumstances" that Congress may, from time to time, determine. The term "shall not be infringed" is clear and unambiguous, not under any circumstances. If Congress chooses to infringe, it must first seek amendment to the Constitution to do so.

10

The plain meaning of the Second Amendment, coupled with its prohibitory provision, and with the clearly defined amendatory process commanded in Article V demonstrates that the essential elements necessary to establish a claim against the validity of federal regulations relating to firearm possession and receipt are found in the Constitution itself. Nothing could be more clearly defined than the fact that the Second Amendment affords every citizen the right to keep and bear arms; the government may not, and shall not, infringe upon that right, and no legislation may be enacted which modifies, amends, or abolishes the right etched out in that amendment. Downes v. Bidwell, 182 U.S. 244 (1901). Because the provisions of the Constitution stand on equal footing, Ulmar v. United States, supra (as no constitutional guaranty enjoys preference, so none should suffer subordination or deletion), no other provision of the Constitution may be utilized to reach the result that legislation is unable to reach, King v. Mullins, 171 U.S. 404, 18 S.Ct. 925, 43 L.Ed. 214. Thus, reliance upon the Commerce Clause, as has been the case in the past as authority to amend the Second Amendment with legislation is misplaced. Simply put, there can be no legislation which abrogates a right embedded in a provision of the Constitution.

18 U.S.C. §922(g)(1), enacted December 16, 1968, provides as follows:

"(g) It shall be unlawful for any person—
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

to ship or transport, in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

The language of the statute itself serves as a constructive amendment to the Second Amendment 8/ it reinstates the language of the Second Amendment casting it in terms so that it no longer reads "the right of the People to keep and bear arms shall not be infringed," but now reads "the right...

8/ A constitutional clause must be construed to carry out the intention of the framers. Woodson v. Murdock, 22 Wall. 351, 22 L.Ed. 716, 88 U.S. 351 (1874). The words expressing the various grants in the Constitution are words of general import, and they are to construed as such, and as granting to the full extent the powers named. Fairbanks v. United States, 181 U.S. 283, 21 S.Ct. 648, 45 L.Ed. 862 (1901).

11

a select group, whom Congress has chosen, of the People, to keep and bear arms shall not be infringed." Not only has Congress altered the reach of 18 U.S.C. §922(g)(1), and other related federal provisions, by declaring and defining which citizens may exercise the right, Congress has also decided that the right guaranteed within the amendment can also be infringed, if they choose to infringe it. Clearly, this is in direct contravention of the amendment and, constitutes a constructive and effective amendment to the Second Amendment without regard for, or resort to, the amendatory process prescribed in Article V, and intended to prevent the very type of extraconstitutional activity to which this argument is directed. As is evidenced from the Federalist No. 78, and several decisions of the Supreme Court when the Constitution was precious and a sacred principle, it is not the function of the legislature or judicial bodies, national or state, to amend the Constitution, or any provision of it, except through the amendatory process. King v. Mullins, supra, United States, supra.

The Constitution is the supreme law of the land, binding all executive, judicial and legislative forums to it, Dodge v. Woolsey, 18 How, 331, 15 L.ed. 401, 59 U.S., 331, (1855); Cook v. Moffat, 5 How, 295, 12 L.ed. 159, 46 U.S., 295 (1847). Where a constitutional guaranty of rights and immunities the citizen are in issue, the citizen has a right to have those rights and immunities judicially declared and protected Lawrence v. State Tax Commission, 286 U.S. 276, 52 S.Ct. 556, 87 A.L.R. 374, 76 L.ed. 1102 (1932).

The Constitution is intended to preserve practical and substantive rights, not to maintain theories. Faitoute Iron & Steel Co. v. Asbury Park, 316 U.S. 502, 62 S.Ct. 1129, 86 L.Ed. 1629 (1942), and a Clause in the Constitution must be given full force and effect throughout the union. King v. Mullins, supra.

Until the people have ratified a change in the Second Amendment (Second Article in Amendment), so that the rights, liberties privileges and immunities, secured therein are removed, no amendment to the amendment can take place, As noted earlier, nothing new can be added, and nothing old can be taken out, of the Constitution except through the amendatory process. Ullman v. United States, supra.

The only question presented here is whether 18 U.S.C. §922(g)(1), and other related provisions of the federal firearms control acts, constructively and effectively amend the Second Amendment, and was such amendment accomplished by Congress without process mandated in Article V? The answer to

both questions is "yes," thus, 18 U.S.C. §922(g)(1), and such other provisions as have the same effect upon the Second Article in Amendment, are null and void and have no legal force or effect whatsoever.[9] Indeed, the Constitution will give way to legislative amendments, whether constructive, or direct, which deprive citizens, or any group of them, of rights prescribed therein, simply because their chosen toward the assertion of the right by those citizens or segment of the population that Congress chose, of its own which to disqualify. Cox v. Louisiana, supra. Regardless of status, whether rich or poor, notorious or of model character the Constitution and the rights, prescribed therein extend to citizens alike. Smith v. United States, supra.

Based on the foregoing the Court should declare federal firearms legislation prohibiting possession and receipt of firearms by persons previously convicted of felony offenses within the United States, to be constructive amendments to the Second Article in Amendment, and, therefore, violative of Article V.

ooOoo

Gary William Holt is a self-educated legal technician. He is currently confined pursuant to a judgment of conviction for violating 18 U.S.C. §922(g)(1). The foregoing synopsis of a legal challenge to the validity of §922(g)(1), and the related firearms provisions, has been presented in a petition for a writ of habeas corpus currently pending in the United States District Court for the Northern District of Texas Fort Worth Division. Throughout the research involved in compiling this argument, a conclusion can be made that this claim has not previously been presented. It is, therefore, an issue of first impression. Congress, for a number of years has enacted much legislation that has the same effect as that outlined here. None of the legislation, where it encroaches a right prescribed within the "Bill of Rights" is legal. Now is the time to let them know we, the proud descendants of founding fathers, "we've had enough." The will of Congress should never replace the will of the people.

ooOoo

**Every Citizen has a right to protect himself and his property. This Right inheres, regardless of his status or previous servitude to the State or National government.**

9/ It should be noted that the Attorney General has determined ammunition. However, prosecutions continue under 18 U.S.C. §918(8) regardless. This, like firearms, represents sheer abuse of authority. Only by substituting the individual will of the regulators for the will of the People, has such abuses been possible.



Office of the Attorney General
Washington, D.C. 20530

May 17, 2001

Mr. James Jay Baker
Executive Director
National Rifle Association
Institute for Legislative Action
11250 Waples Mill Road
Fairfax, VA 22030

Dear Mr. Baker,

Thank you for your letter of April 10, 2001 regarding my views on the Second Amendment. While I cannot comment on any pending litigation, let me state unequivocally my view that the text and the original intent of the Second Amendment clearly protect the right of individuals to keep and bear firearms.

While some have argued that the Second Amendment guarantees only a "collective" right of the States to maintain militias, I believe the Amendment's plain meaning and original intent prove otherwise. Like the First and Fourth Amendments, the Second Amendment protects the rights of "the people," which the Supreme Court has noted is a term of art that should be interpreted consistently throughout the Bill of Rights. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (plurality opinion). Just as the First and Fourth Amendment secure individual rights of speech and security respectively, the Second Amendment protects an individual right to keep and bear arms. This view of the text comports with the all but unanimous understanding of the Founding Fathers. *See, e.g.*, Federalist No. 46 (Madison); Federalist No. 29 (Hamilton); *see also*, Thomas Jefferson, Proposed Virginia Constitution, 1764 ("No free man shall ever be debarred the use of arms."); George Mason at Virginia's U.S. Constitution ratification convention 1788 (" I ask, sir, what is the militia? It is the whole people . . . To disarm the people is the best and most effectual way to enslave them.").

This is not a novel position. In early decisions, the United States Supreme Court routinely indicated that the right protected by the Second Amendment applied to individuals. *See, e.g.*, *Logan v. United States*, 144 U.S. 263, 276 (1892); *Miller v. Texas*, 153 U.S. 535, 538 (1893); *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897); *Maxwell v. Dow*, 176 U.S. 581, 597 (1900). Justice Story embraced the same view in his influential *Commentaries* on the Constitution. *See* 3 J. Story, *Commentaries on the Constitution* § 1890, p. 746 (1833). It is the view that was adopted by United States Attorney General Homer Cummings before Congress in testifying about the constitutionality of the first federal gun control statute, the National Firearms Act of 1934. *See* The National Firearms Act of 1934: Hearings on H.R. 9066 Before the House Comm. on Ways and Means, 73rd Cong. 6, 13, 19 (1934). As recently as 1986, the United States Congress and President Ronald Reagan

explicitly adopted this view in the Firearms Owners' Protection Act. *See* Pub. L. No. 99-308, § 1(b) (1986). Significantly, the individual rights view is embraced by the preponderance of legal scholarship on the subject, which, I note, includes articles by academics on both ends of the political spectrum. *See, e.g.*, William Van Alstyne, *The Second Amendment and the Personal Right to Arms*, 43 Duke L.J. 1236 (1994); Akhil Reed Amar, *The Bill of Rights and the Fourteenth Amendment*, 101 Yale L.J. 1193 (1992); Sanford Levinson, *The Embarrassing Second Amendment*, 99 Yale L.J. 637 (1989); Don Kates, *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204 (1983).

In light of this vast body of evidence, I believe it is clear that the Constitution protects the private ownership of firearms for lawful purposes.[1] As I was reminded during my confirmation hearing, some hold a different view and would, in effect, read the Second Amendment out of the Constitution. I must respectfully disagree with this view, for when I was sworn as Attorney General of the United States, I took an oath to uphold and defend the Constitution. That responsibility applies to all parts of the Constitution, including the Second Amendment.

Thank you for your interest in this matter.

Sincerely,

John Ashcroft
Attorney General

[1] Of course, the individual rights view of the Second Amendment does not prohibit Congress from enacting laws restricting firearms ownership for compelling state interests, such as prohibiting firearms ownership by convicted felons, just as the First Amendment does not prohibit shouting "fire" in a crowded movie theater. As Samuel Adams explained at the Massachusetts ratifying convention, the proposed Constitution should "never [be] construed to prevent the people of the United States *who are peaceable citizens*, from keeping their own arms." Reprinted in 2 B. Schwartz, *The Bill of Rights: A Documentary History* 675 (1971) (emphasis added).