DEBORAH M. SMITH
Acting United States Attorney

CRANDON RANDELL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email:crandon.randell@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case 3:03-cr-034-JMF-JDR |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **OBJECTIONS TO** |
| vs. | ) | **MOTION PURSUANT TO** |
| | ) | **28 U.S.C. §2255** |
| AARON SHARPE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW the United States of America, by and through counsel, and opposes defendant Aaron Sharpe's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255.

I.  INTRODUCTION

    A.  Summary of Proceedings Below

On January 24, 2003, Sharpe was arrested by the FBI as a result of his involvement in a check counterfeiting scheme.[1] A few weeks later, on February 18, 2003, he was also indicted on marijuana and gun possession charges. ER 1-3. His jury trial on the latter charges began on June 9, 2003. CR 26. Following the government's case, Sharpe moved for a judgment of acquittal on counts 1 and 2, the gun possession counts, which were denied; Sharpe renewed his motion at the close of evidence, which again were denied. CR 31. On June 12, the jury heard closing arguments, was instructed as to the rules of law, and began its deliberations. CR 26, 31. The same day, the jury returned a verdict of guilty on all counts. CR 31.

Following preparation of the Presentence Report (PSR), to which no exception was taken by the defendant, Sharpe was sentenced to 188 months, followed by a consecutive five-year sentence because of his status as an armed career offender.[2] CR 40. Sharpe appealed and on May 4, 2005, the United States

---

[1] Sharpe later pleaded guilty to his role in the counterfeit check scheme, in which he and his confederates defrauded local banks of over $165,000.

[2] His sentencing on the charges in this case was combined with his sentencing on the check counterfeiting charges to which he had pleaded guilty.

Court of Appeals for the Ninth Circuit affirmed on all counts. Sharpe then filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 on February 17, 2005.

    B.    <u>Statement of Facts</u>

On January 10, 2003, in the dead of winter, a resident in a mobile home park in Anchorage, Alaska, noticed water dripping from a nearby trailer. The leak was reported to the park manager, who confirmed the leak, and tried to contact the renter of the mobile home, known to him as "Ronknee Harp." Unsuccessful in reaching the tenant, the manager attempted to enter the mobile home using the master key, but found that the lock had been changed. The manager then had a locksmith pick the lock, only to discover that the inside of the mobile home had been gutted and converted to a largely self-sustaining marijuana grow operation, complete with automated lights and watering system, and dozens of growing plants in various stages of development. The manager also saw a shotgun in plain view on a shelf behind the front door of the unit. The windows in the mobile home were blacked out, and a tarp had been sealed over the door to the main part of the unit, where the plants were growing. The manager promptly called the police.

"Harp" had rented the mobile home the previous August. He had come into the rental office with a friend, but filled out the application and was approved as

the sole tenant. According to the manager, "Harp" did the talking, and asked all the questions. After renting the place, Harp paid the rent in cash, in person, every month, on time. The manager, the office assistant, and a neighbor all reported that they had seen Harp coming and going to the unit from time to time, sometimes alone, and sometimes with others. The gas and electric bills were both in the name of "Ronknee Harp."

The police were unable to find any record of a "Ronknee Harp." However, fingerprints belonging to Aaron Sharpe, defendant in this case, were found both on the reflectors for the lights and on the shotgun. At trial, the manager and the office assistant visually confirmed that "Ronknee Harp" was in fact Aaron Sharpe, and Sharpe did not dispute that he was the individual who had rented the trailer, or that he was responsible for the marijuana grow.

The jury convicted Sharpe on all three counts. CR 30. A presentence report was prepared, which concluded that he was an armed career criminal as defined by 18 U.S.C. § 924(e), and recommended that he be sentenced accordingly. The United States Court of Appeals for the Ninth Circuit affirmed the conviction and sentence.

The PSR reflected that in late 1990 and early 1991 Sharpe embarked upon what can only be described as a crime spree; on December 21, 1990, he entered a

residence, stole jewelry, a VCR, a scanner, household items and clothing. On January 16, 1991, he stole two four-wheel recreational vehicles from a store. On February 11, he stole another four-wheeler and a snow machine from the same store. The same day, he broke into a home, stole a VCR, stereo equipment, rifles, liquor and other items. On February 18, he stole a pickup truck and a set of electrical tools. On February 21, he stole a trailer with two snow machines from a residence. On February 24, he stole another snow machine. Also in February, he broke into another residence and stole a bearskin rug, a television, furniture, cash, checks, tools and other items. Finally, on March 8, 1991, he broke into a residence and stole a VCR camera and accessories. He was caught, charged and convicted of two counts of first degree burglary, four counts of third degree theft, and two counts of second degree theft; the PSR counted the burglary conviction as one of the three prior violent felonies. PSR ¶¶ 70, 77; ER 27, 28.

On March 8, 1991, in a separately-charged offense, Sharpe held up a Burger King at gunpoint. When pursued and pulled over by the police, Sharpe pulled his weapon on the officer and fired shots. Driving off at high speed, he continued to shoot at pursuing officers. He abandoned the vehicle in the course of the chase, and was finally captured attempting to hide behind other vehicles. For this offense, Sharpe was convicted of robbery in the first degree and assault in the third degree.

While on parole after his release, Sharpe was stopped while driving the wrong way on a one-way street with an open container of alcohol in the car. He tested positive for cocaine, was arrested for reckless driving, and was charged with additional assault and armed robbery charges. Following these events, he fled the state. PSR ¶ 78; ER 29.

Sharpe was eventually captured and extradited to Alaska where he was convicted for assault in the third degree. Following that, on November 13, 1997, Sharpe and a co-defendant decided they wanted some cocaine, but instead of purchasing it, decided to rob a dealer. The defendant was armed with an AK-47 rifle and a 9-millimeter handgun; a gunfight ensued. A stray bullet hit a neighbor in a nearby trailer, fracturing her arm, and lodging in her abdomen. Id.

These three convictions, one for burglary in the first degree and two for assault in the third degree, were charged in Count One of Sharpe's indictment as the prior felonies underlying his charges as a felon in possession of a firearm, and Sharpe stipulated that he was a felon prior to trial. Tr. 1-109. They also were the basis for the PSR's conclusion that Sharpe was an armed career offender subject to the enhanced sentencing provisions of 18 U.S.C. § 924(e). PSR ¶ 70; ER 27. Sharpe filed no objections to the PSR, and did not challenge its factual findings or conclusions in any way. At sentencing, Sharpe's counsel conceded that the armed

career criminal statute applied, and that the jury verdict "really did not leave us a lot of latitude to discuss things here." IOS Tr. 4. Sharpe testified at the sentencing that he had discussed the PSR with his counsel, that all his questions had been answered, and that he had no questions at all about the report. Id. at 4-5. The district court adopted the findings and conclusions of the PSR, and sentenced Sharpe as an armed career criminal. IOS Tr. 3.

II.   ARGUMENT

   A.   General Rules of § 2255 Jurisdiction and Procedural Default

As a preliminary matter, federal habeas corpus relief does not apply to any possible claim, or attack, that could be made on an underlying conviction. They are intended to reach only issues of jurisdictional or constitutional magnitude. See United States v. Knockum, 881 F.2d 730, 732 (9th Cir. 1989). The courts have long held that "a collateral challenge may not do service for an appeal." United States v. Frady, 102 S. Ct. 1584, 1593 (1982). As the Supreme Court noted in the United States v. Addonizio, 99 S. Ct. 2234, 2239 (1979), "[i]t has, of course, been long settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice."

Section 2255 is not designed to provide criminal defendants multiple opportunities to challenge their sentence. United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985). Most non-constitutional violations of federal law are not cognizable on collateral review. See, e.g., Addonizio, 442 U.S. at 186 (institution of parole guidelines); United States v. Anderson, 987 F.2d 251, 259-260 (5th Cir.)(erroneous jury instruction), *cert. denied,* 510 U.S. 853 (1993); United States v. Lanier, 205 F.3d 958, 966 (7th Cir. 2000) (erroneous jury instruction); Fiumara v. United States, 727 F.2d 209, 213 (2nd Cir.)(wiretapping violation), *cert. denied,* 466 U.S. 951 (1984). In particular, claims of error under the sentencing guidelines are generally not cognizable under § 2255. See, e.g., Burke v. United States, 152 F.3d 1329 (11th Cir. 1998).

B.   Two Central Rules

In addition to the basic limits on what claims may be cognizable under §2255, two central rules of procedural default emphasize the limited nature of collateral review of final judgments. It is black letter law that issues previously determined on the merits on direct appeal are barred from re-litigation under § 2255. See Polizzi v. United States, 550 F.2d 1133, 1135-36 (9th Cir. 1976); United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985)(*per curiam*); Egger v. United States, 509 F.2d 745, 748 (9th Cir.), *cert. denied,* 423 U.S. 842 (1975). Thus, if the

8

appellate court has previously passed on the ground on direct appeal, it is inappropriate to reconsider the same ground in habeas petition. Whether something is the same ground turns on whether it presents a sufficient legal basis for granting the relief sought by the applicant. Thus, "Identical grounds may often be proved by different factual allegations. So also, identical grounds may also often be supported by differently legal arguments." Polizzi, 550 F.2d at 1136, quoting Sanders v. United States, 83 U.S. 1068, 1077 (1963). A petitioner does not create a different ground merely by alleging different facts, asserting different legal theories, or couching his argument in different language. Campbell v. Blodgett, 997 F.2d 512, 518 (9th Cir. 1993).

Even if a claim is cognizable and was not raised on a direct appeal a second rule applies. Where a defendant could have raised a claim of error on direct appeal but fails to do so, he must demonstrate the "cause" excusing his procedural default, and demonstrate "actual prejudice" resulting from the claim of error. Mere conclusory statements in a § 2255 motion are not enough to require a hearing. United States v. Johnson, 988 F.2d., 941, 945 (9th Cir.1993); United States v Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1997) (defendant's statement alleging systemic exclusion of Black and Hispanic persons from jury pool deprived him of impartial jury was conclusory, and thus insufficient to demonstrate cause and

prejudice.).  Similarly, conclusory references to broad legal theories are insufficient to establish that a claim was adequately preserved.  Thus, with regard to the issue of whether a defendant has exhausted state remedies by properly presenting an issue to a state court, federal courts have repeatedly noted that "general appeals to broad constitutional principals, such as due process, equal protection, and the right to a fair trial, have been found insufficient to establish exhaustion."  See Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Shumway v. Payne, (2000 WL 1199596 (9th Cir., August 24, 2000) (holding defendant did not fairly present a federal claim to state courts by stating that redaction of portions of her statement to the police violated her right to due process and to present a defense at trial; "naked" reference to due process insufficient to inform court of her claim.)

To meet the cause standard of cause and prejudice, the defendant must show: "some objective factor external to the defense impeded counsel's effort to raise the claim."  Clark v. Lewis, 1 F.3d 814, 820 (9th Cir. 1993), quoting McCleskey v. Zant, 111 U.S. 1454, 1470 (1991).  Thus, if the petitioner possessed,  or by reasonable means could have obtained, a sufficient basis to allege the claim on appeal, he has not alleged "cause" for purposes of § 2255.  Omission of the claim will not be excused because evidence discovered later may have supported or

10

strengthened the claim. See, McCleskey, 111 U.S. at 1472. "A different factual basis or argument asserted to support the same legal theory advanced previously does not constitute a new ground for relief." Clark, supra, 1 F.3d at 822, citing Campbell at 516. Similarly, a claim that the legal basis for defendant's claim was not reasonably available to counsel at the time of the appeal, is not sufficient cause as was pointed out in the Supreme Court decision in Bousley v. United States, 118 U.S. 1604, 1611 (1998).

In Bousley the Court held that defendant's failure to raise a claim under the Supreme Court's recent decision in Bailey v. United States, 116 U.S. 501 (1995) did not establish the "cause" element of the cause and prejudice standard even though the case had not been decided at the time of defendant's direct appeal. The Court noted: "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Id. at 1611, quoting Engle v. Isaac, 102 S. Ct. 1558 (1982).

A petitioner can avoid the cause and prejudice bar only if he can demonstrate that "a miscarriage of justice" would occur absent a review on the merits. This exception, however, only applies to remedy a procedural error of constitutional proportion that has probably resulted in the conviction of an innocent person. The exception is only available when the defendant "supplements

his constitutional claim with a colorful showing of factual innocence". Coley v. Gonzales, 55 F.3d 1385, 1387 (9th Cir. 1995); see also United States v. Benboe, 157 F.3d 1181, 1183) (9th Cir.1998).

In sum the following rules apply to any claim raised by defendant:

    1.    Only certain alleged errors are cognizable in a petition under §2255;

    2.    Issues raised on direct appeal may not be relitigated in a §2255 petition;

    3.    Issues not raised on direct appeal may not be raised in a petition under §2255 unless the petitioner demonstrates cause and prejudice for failing to raise the issue, or actual innocence.

III.    APPLICATION OF GENERAL RULES OF § 2255

All of the claims in the defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 appear to be barred by clear and straightforward application of the rules applicable to § 2255.

    A.    Defendant's Ground One Claim is Barred By Applicable Case Law and Congress

The defendant seems to be arguing that 18 U.S.C. 922 (g) (1) is unconstitutional because it violates the defendant's Second Amendment right to bear arms. The Second Amendment's right to bear arms is a constitutional right

similar to the right to vote. When an individual is convicted of a felony such as possession of a firearm, the rights guaranteed to an individual are revoked. An individual is no longer entitled to vote or to hold public office. Possession of a firearm is no different.

In United States v. Emerson, 270 F.3d 203 (5th Cir. 2001), a divided panel of the Fifth Circuit reversed the holding of a district court, United States v. Emerson, 46 F. Supp. 2nd 598 (N.D.Tex. 1999), that § 922(g)(8) violated the Second Amendment, and due process notice requirement of the Fifth Amendment, because it allowed state domestic violence restraining orders, issued without a particularized finding of future violence, to automatically deprive a citizen of Second Amendment rights. Rejecting the "collectivist" view of the Amendment -- which confines the right to bear arms to service in an organized militia -- the panel majority held that the Amendment "protects the rights of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms . . . that are suitable as personal . . . individual weapons . . . ." Emerson, 270 F.3d at 260.

Nonetheless, the Emerson Court reasoned that the right was subject to "limited, narrowly tailored specific exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to

13

individually keep and bear their private arms as historically understood in this country" including the ability to prohibit "felons, infants and those of unsound mind . . . from possessing firearms." Id. at 261.

The Ninth Circuit has endorsed the "collective" view of the Second Amendment, expressly rejecting the "individual" view of the Fifth Circuit in Emerson. In Nordyke v, King, 319 F.3d 1185 (9th Cir. 2003), the Ninth Circuit rejected First and Second Amendment challenges to county gun ordinances. In Hickman v. Block, 81 F.3d 98, 102 (9th Cir. 1996), the Ninth Circuit held that "it is clear that the Second Amendment guarantees a collective rather than an individual right. Because the Second Amendment guarantees the right of the states to maintain armed militia, the states alone stand in the position to show legal injury when this right is infringed." The Department of Justice has taken a position consistent with the Emerson court. In any event, the Second Amendment challenge alluded to by the defendant in his § 2255 motion should be denied.

The established precedent of the Eighth Circuit also upholds the constitutionality of 18 U.S.C. § 922(g)(1). In United States v. Waller, 218 F.3d 856, 857 (8th Cir. 2000), the court held that "it is now well-settled that Congress did not violate the Second Amendment in enacting 18 U.S.C. § 922(g)(1). See also Cody v. United States, 460 F.2d 34, 27 (8th Cir. 1972).

  B. <u>Defendant's Ground Two Claim are Barred by the Relitigation Bar Applicable to §2255 Claims</u>

  The relitigation bar appears to encompass everything contained in Ground Two of defendant's motion. The defendant raised the same issues on direct appeal. On pages 8-9 of Appellant's Opening Brief, the defendant argued there was no evidence presented at trial which showed possession and/or control of the firearm. He also argued that there was no evidence connecting him to the firearm because he was never seen with the firearm, he was rarely at the premises, and the firearm was sitting on a shelf, "rusting." On direct appeal, the Court held there was sufficient evidence to establish possession of the firearm and a rational trier of fact could have found possession beyond a reasonable doubt.[3]

  In the present motion, the defendant again argues that there was no evidence to establish that he possessed the firearm at some time after he became a convicted felon and no evidence to establish when the fingerprint came to be placed on the firearm. As in <u>Clark</u>, supra, 1 F.3d at 822, a different argument asserted to support the same legal theory advanced previously does not constitute a new ground for relief. Therefore, the defendant has made the same, if not very similar, argument regarding possession of the firearm. Defendant's Ground Two claim raises nothing except issues that were decided against him on direct appeal and are therefore

---

  [3] Memorandum Opinion, Page 2-3

barred from relitigation here.  See pp. 9-10 infra.

      C.      Defendant's Ground Three Claim is Barred Because Defendant had a Full and Fair Opportunity to Litigate the Fourth Amendment Claim

The defendant argues that by changing the lock on his trailer, he had a greater expectation of privacy than was presented at trial.  Due to this, defendant argues that the evidence seized and police search "fall[s] under a different spectrum of the Fourth Amendment."[4]

It is well settled law that Fourth Amendment claims are not cognizable as long as the prisoner had a "full and fair" opportunity to litigate the claim on direct appeal.  Stone v. Powell, 428 U.S. 465, 469 (1976).  The Court, in Stone, held that where the state had provided an opportunity for "full and fair litigation of a claim under the Fourth Amendment, state prisoners should not have been granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  Id.  In United States v. Hearst, 638 F.2d 1190, 1196 (9th Cir. 1980), *cert. denied*, 451 U.S. 938 (1981), the government provided the defendant a full and fair opportunity to raise this issue on direct appeal and, therefore, it could not be raised on collateral review.  See also United States v. Cook, 997 F.2d 1312, 1317 (10th Cir. 1993)(following Hearst); Tisnado v. United States, 547 F.2d 452, 456 (9th Cir. 1976).

---

    [4]    5(j) of Defendant's Motion

Here, the defendant was provided a full and fair opportunity to litigate his claim under the Fourth Amendment. The government also provided him with an opportunity to raise this issue on direct appeal and, therefore, it cannot be raised on collateral review. Furthermore, the defendant has failed to provide an explanation for how the unauthorized changing of a lock on a rental property front door creates an expectation of privacy that would "fall under a different spectrum of the Fourth Amendment glass."[5] In this case, it was necessary for the manager to enter the trailer to resolve the leak problem and thwart the potential danger that the leak could pose to other properties. The defendant cites no case law which supports the notion that changing of a lock on a rental unit creates a greater expectation of privacy.

Since the defendant could have raised the claim of error on direct appeal but failed to do so, he must demonstrate the cause excusing his default, and actual prejudice resulting from the claim of error. Mere conclusory statements in § 2255 motion are not enough to require a hearing. United States v. Johnson, 988 F.2d. 941, 945 (9th Cir. 1993). The government is unable to discern where, if at all, the defendant proved cause and actual prejudice. The defendant's argument is nothing more than a "merely conclusory statement," and demonstrates neither cause

---

[5] 5(j) of Defendant's Motion

excusing his procedural default, nor actual prejudice resulting from the claim of error. Thus, the defendant's § 2255 motion should be denied.

    D.    <u>Defendant's Grounds Four and Five Fail Because Booker Does Not Apply Retroactively</u>

The defendant seems to argue that the judgment entered in this case is void and the defendant is entitled to have his conviction and sentence set aside and to have the charges made against him dismissed. Defendant further advises that counsel failed to investigate the law and recognize the unconstitutionality of § 3553 (b) (1) based on <u>United States v. Booker</u>, 125 S.Ct. 738 (2005).

In <u>United States v. Cruz</u>, 423 F.3d 1119 (9th Cir. 2005), the Court considered the question whether <u>Booker</u> applied retroactively to cases on collateral review. The Court in <u>Cruz</u> held, "that Booker does not apply retroactively to convictions that became final prior to its publication." <u>Id.</u> Here, the defendant's conviction became final June 12, 2003. Booker was decided on January 12, 2005. Therefore, the defendant's motion, raising a <u>Booker</u> claim, should be denied. The sentencing guidelines were mandatory at the time of the defendant's sentencing. Thus, the defendant's sentence is appropriate and the defendant's motion should be denied.

## IV.  CONCLUSION

For all of the reasons stated above, the government respectfully requests that

this court recommend that defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 be denied in full.

RESPECTFULLY SUBMITTED this 31st day of July 2006, at Anchorage, Alaska.

>DEBORAH M. SMITH
>UNITED STATES ATTORNEY
>
>s/ Crandon Randell
>Assistant U.S. Attorney
>Federal Building & U.S. Courthouse
>222 West Seventh Avenue, Room 253, #9
>Anchorage, Alaska  99513-7567
>Phone: (907) 271-5071
>Fax: (907) 271-1500
>Email:crandon.randell@usdoj.gov

I declare hereby certify that on July 31, 2006
a copy of the foregoing was served electronically
 on Mary Geddes.

  s/ Crandon Randell
Assistant U.S. Attorney