**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:03-cr-0034-JWS-JDR |
| Plaintiff,<br>vs. | **RECOMMENDATION<br>REGARDING SHARPE'S<br>MOTION PURSUANT TO 28<br>U.S.C. § 2255** |
| AARON SHARPE, | |
| Defendant. | (Docket No. 57) |

The court has now before the merits of Mr. Aaron Sharpe's motion to vacate pursuant to, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 57, supplemented at No. 59 and partially amended at No. 70). Said motion is brought on the grounds that: (1) Sharpe's conviction was the result of enforcement of an unconstitutional statute; (2) his conviction was the result of the jury's misunderstanding of the government's burden of proof as to Counts I and II of the indictment – which was the result of ineffective assistance of counsel in violation of his constitutional rights; (3) his conviction was based on evidence obtained from a search and seizure which violated his constitutional rights; (4) his sentence was the result of the trial court's denial of his constitutional rights to a jury trial due to ineffective assistance of counsel; and (5) his conviction and sentence were violative of his constitutional rights because the entry of judgment was by a court which was without competent jurisdiction. The government responded at docket No. 75 and Sharpe replied thereto at No. 79-1.[1]

_____

[1] Sharpe filed a *pro se* response at docket No. 79-2 and requested co-counsel status. An order issued denying that request and denying consideration of docket No. 79-2. The court, however, has considered Sharpe's arguments included in his supplemental

An evidentiary hearing was had (December 12-11, 2006) on the issue of whether Sharpe's trial attorney rendered ineffective assistance of counsel by failing to file a motion to suppress evidence. Further briefing was taken on that issue. (Docket Nos. 98 and 99; reply at 100). For the reasons that follow, Sharpe's motion should be denied.

## BACKGROUND

In January of 2003 Sharpe was arrested and plead guilty on due to his involvement in a check counterfeiting scheme. On January 18, 2003, he was indicted on marijuana and gun charges. He was tried by jury on those charges. On June 12, 2003, the jury returned a verdict of guilty on all counts. Sharpe's sentencing on both cases was combined, and he was sentenced to 188 months followed by a consecutive five-year sentence because of his status as an armed career offender. Sharpe appealed and on May 4, 2005 the Ninth Circuit affirmed his convictions. The instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 was filed on February 17, 2005, and is limited strictly to his conviction on the marijuana and gun charges.

## FACTS

On January 10, 2003, a mobile home (metal double wide trailer) rented by Sharpe was seen to be leaking water by a resident of the mobile home park in which it was located. The resident reported the leak to the park manager. Upon confirming the leak, the manager – Arthur Chojnacki who testified at the evidentiary hearing – tried to contact the renter, known to him as "Rocknee Harp". Chojnacki first tried telephoning the tenant, but was unsuccessful in that effort. He sent another employee/plumber – Jerzy Bukavich – to look at the trailer. He went under the trailer and reported back that there was a serious problem. He knocked on both doors to the trailer but there was no response. Chojnacki got a spare key for the trailer, and, accompanied by another employee – Cris Osesik – tried to open the trailer door, but was unsuccessful because

---

motion at docket No. 59, which was filed while his status as a litigant was *pro se*.

the lock had been changed.  The plumber went around the trailer knocking loudly on its walls trying to wake-up anyone who might be inside but asleep.  No one responded. There was no vehicle parked at the site.  According to Chojnacki's testimony at the hearing on this motion the water was pouring rapidly from the trailer and he was concerned about property damage to it.

Then he contacted a locksmith who happened to be working at another space in the trailer park.  The three  men were present when the locksmith arrived.  The locksmith unlocked the door.  Chojnacki then entered the trailer.  He observed that the living room was separated by a plastic wall with a zipper door.  He had not smelled marijuana prior to entry, but could smell marijuana upon entry.  It was also hot and there were bright lights.  Upon opening the zipper Chojnacki observed marijuana growing. He then told everybody and to touch anything and exited from the trailer by backing up out the door.  Chojnacki  called the police on his cell phone, and all three men waited at the trailer until the police arrived.

The police (officers John Glor and Jason Kwasigroch arrived within a half an hour.  Chojnacki told the police what he found inside.  He offered to show the officers the inside of the trailer, but they responded by telling him that they could not go in and that they needed a search warrant.  Chojnacki told the officers about the leak, that he had tried unsuccessfully to contact the tenant, and entered the trailer after a locksmith got the door open.  At the hearing on the ineffective assistance of counsel claim Chojnacki testified that the officers did not enter the trailer prior to their obtaining a search warrant.  He could not remember if he opened the door for them to look into the trailer. Bruce Johnson, an investigator working for Sharpe's counsel testified that Chojnacki told him he had shut the door and it remained shut until the police arrived. Then, according to Johnson, he asked the police if they wanted to look inside and he opened the door for them to do so.  Chojnacki's testimony amounted to a denial of

having said those things.

One of the other trailer park employees – Cristof Osesik – testified that he was the maintenance supervisor and Chojnacki was his supervisor. According to Osesik, they knocked on the doors and windows (which were covered) of the trailer but got no response. He stated that when Chojnacki opened the door he could smell marijuana, but until then he had not smelled marijuana. According to him, the police opened the door of the trailer and announced there presence by asking if anyone was there. Further, the officers came out of the trailer with a shotgun and a pistol. He stated that upon opening the door the shotgun was visible. Later Osesik saw the plumber go under the trailer and turn of the water valve.

Officer Glor also testified at the hearing. Officer Glor testified that he and officer Kwasigroch arrived at the trailer in separate vehicles at approximately the same time. He testified that upon arriving Chojnacki identified himself as the trailer park manager, and told him about making an emergency entry because of the water leak, and that he had seen the marijuana grow operation and that there was a shotgun inside the door. Chojnacki also explained that he had been unable to contact the tenant. Glor observed no vehicle at the location of the trailer. Glor was concerned about the possibility that someone being in the trailer with a weapon. This concern was heightened by the apparent presence of marijuana in the trailer. His concern was not only for officers safety but for the civilians in the area. The water was still leaking from the trailer. The officers entered the trailer to clear the residence and make sure that no one was inside. Prior to entering the trailer the officers announced their presence and paused. Upon entry the officers weapons were in hand and they gave the standard yell "This the Anchorage Police Department. I need anyone inside to come out now." He explained that this announcement was yelled at the top of his lungs because sometimes there are people inside in the shower or sleeping or because they may not want you to

find them.  Officer Glor could not remember if the door was shut or open upon their arrival, but he was sure that ir it was closed it was not locked.  He also recalled that he could smell marijuana once he got close to the trailer.  His police report, however, did not mention the smell of marijuana.

After clearing the residence Glor immediately seized the shotgun. Subsequently, he accompanied one of the men – was not sure which one but thinks it was the manager – to shut off some pipes inside the trailer.  All told, he estimated that the total time he was in the trailer prior to obtaining a warrant was three to five minutes. Upon reviewing trial testimony he believed that he had also directed officer Kwasigroch to take photographs, and that Kwasigroch did so prior to obtaining a search warrant.

Officer Kwasigroch testified at the hearing.  He had little independent recollection what he was told.  He recalled meeting Chojnacki, but not what may have been said by him or other persons at the scene, or the actual obtainment of the search warrant.  He had to rely extensively on his report during his testimony.  He did remember being told there was a leak, and that Chojnacki, a plumber and a locksmith were present.  Kwasigroch testified that the door to the trailer was open upon his arrival. He further testified bases upon his police report that he could see marijuana, a shotgun and ammunition boxes were visible through the open door.  He had been told that efforts to contact the tenant were unsuccessful and that the door had been opened by a locksmith because of the concern about the leaking water.  He was aware of no permission to enter having been obtained from the tenant.  Kwasigroch's affidavit communicated to the state magistrate issuing the search warrant that the door had been opened by a locksmith, and that he and Glor had entered the premises to assist the plumber.  The water flow problem was ultimately dealt with when the plumber went under the trailer and shut off the main valve.  His affidavit also stated that Glor secured the shotgun.  Further, for both the plumber's safety and to secure evidence, he

accompanied the plumber to shut off the valves.  The valve underneath the trailer was frozen; however, it was ultimately closed.

Regardless of which of the versions of events was accurate concerning whether the  door was opened or closed upon the arrival of the police,  after the clearing of the residence and the shutting off of some pipe(s) inside the trailer, officer Kwasigroch  left to get a warrant while the other officer remained outside the trailer. A warrant was obtained and the other officer returned in approximately an hour and fifteen minutes.

At trial the manager and the office assistant visually identified Sharpe as the person they knew as "Rocknee Harp".  The police were unable to find any record of Rocknee Harp.  Mr. Sharpe's fingerprints were found both on the reflectors for the lights of the marijuana grow operation and on the shotgun.  The jury convicted Sharpe on all counts.  His trial counsel, William Bryson, died in January of 2006.

The Presentence Report (PSR) reflected that in late 1990 and early 1991 Sharpe embarked upon what can only be described as a crime spree; on December 21, 1990, he entered a residence, stole jewelry, a VCR, a scanner, household items and clothing.  On January 16, 1991, he stole two four-wheel recreational vehicles from a store. On February 11, he stole another four-wheeler and a snow machine from the same store. The same day, he broke into a home, stole a VCR, stereo equipment, rifles, liquor and other items.  On February 18, he stole a pickup truck and a set of electrical tools. On February 21, he stole a trailer with two snow machines from a residence. On February 24, he stole another snow machine.  Also in February, he broke into another residence and stole a bearskin rug, a television, furniture, cash, checks, tools and other items. Finally, on March 8, 1991, he broke into a residence and stole a VCR camera and accessories.  He was caught, charged and convicted of two counts of first degree burglary, four counts of third degree theft, and two counts of second degree theft; the

PSR counted the burglary conviction as one of the three prior violent felonies.

On March 8, 1991, in a separately-charged offense, Sharpe held up a Burger King at gunpoint. When pursued and pulled over by the police, Sharpe pulled his weapon on the officer and fired shots. Driving off at high speed, he continued to shoot at pursuing officers. He abandoned the vehicle in the course of the chase, and was finally captured attempting to hide behind other vehicles. For this offense, Sharpe was convicted of robbery in the first degree and assault in the third degree. While on parole after his release, Sharpe was stopped while driving the wrong way on a one-way street with an open container of alcohol in the car. He tested positive for cocaine, was arrested for reckless driving, and was charged with additional assault and armed robbery charges. Following these events, he fled the state.

Sharpe was eventually captured and extradited to Alaska where he was convicted for assault in the third degree. Following that, on November 13, 1997, Sharpe and a co-defendant decided they wanted some cocaine, but instead of purchasing it, decided to rob a dealer. The defendant was armed with an AK-47 rifle and a 9-millimeter handgun; a gunfight ensued. A stray bullet hit a neighbor in a nearby trailer, fracturing her arm, and lodging in her abdomen.

These three convictions, one for burglary in the first degree and two for assault in the third degree, were charged in Count One of Sharpe's indictment as the prior felonies underlying his charges as a felon in possession of a firearm, and Sharpe stipulated that he was a felon prior to trial. They also were the basis for the PSR's conclusion that Sharpe was an armed career offender subject to the enhanced sentencing provisions of 18 U.S.C. § 924(e). Sharpe filed no objections to the PSR, and did not challenge its factual findings or conclusions in any way. At sentencing, Sharpe's counsel conceded that the armed career criminal statute applied, and that the jury verdict "really did not leave us a lot of latitude to discuss things here." Sharpe testified at the

sentencing that he had discussed the PSR with his counsel, that all his questions had been answered, and that he had no questions at all about the report. The district court adopted the findings and conclusions of the PSR, and sentenced Sharpe as an armed career criminal.

## DISCUSSION

All of Sharpe's grounds for relief were articulated in his *pro se* filing of the motion *sub judice*. Only his third ground for relief was amended/clarified by his counsel. (As discussed *supra* at footnote 1, Sharpe's *pro se* briefing on his other claims at docket No. 59 – but not No. 79-2 – was considered). His counsel's briefing addressed only his third ground for relief.

The court first addresses Sharpe's motion as to his first, second, and fourth and fifth grounds for relief. His third ground for relief will be addressed last, because (excepting a single paragraph regarding his fifth claim) it is the only ground his counsel deemed warranted briefing (choosing instead to rely on Sharpe's *pros se* motion), and it calls for more discussion.

**A. Ground One: MOVANT'S CONVICTION IS THE RESULT OF AN ENFORCEMENT OF A STATUTE, ENACTED BY CONGRESS, THAT ALTERS AND/OR MODIFIES A PROVISION OF THE CONSTITUTION OF THE UNITED STATES OF AMERICA IN DIRECT CONTRAVENTION OF THE AMENDMENT PRESCRIPTIONS SET FORTH IN ARTICLE V.**

Sharpe contends that his conviction for being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1) is unconstitutional because the statute is violative of the amendatory process commanded by Article V of the constitution. Specifically, he posits that the statute contravenes the right to bear arms under the Second Amendment. The government supplies the court with some of the case law that shows that this creative argument is without merit. [2] It is well settled law that §

---

[2] As part of its argument, the government relies on the position of the Department of Justice on this issue. That position is of no moment.

922(g)(1) does not violate the Second Amendment of the Constitution. Ergo, its passage did not violate the amendatory process of Article V. *U.S. v. Waller,* 218 F.3d 856, 857 (8th Cir. 2000). The Eight Circuit's view is rooted in the Supreme Court's teaching that the right to bear arms is a collective right rooted in the need to maintain a well regulated militia. *See Lewis v. United States,* 445 U.S. 55, 65-66 & n.8. The Ninth Circuit has taken a "collective right" view of the Second Amendment. *See Hickman v. Block,* 81 F.3d 98, 102 (9th Cir. 1996). True, the Fifth Circuit case cited by Sharpe – *United States v. Emerson,* 270 F3d 203, 227-229 (5th Cir. 2001) takes a contrary view holding that the right to keep and bear arms is an individual, not a collective, right. But this view is contrary to the express teaching of the Supreme Court in *Lewis*, and is contrary to the law of the Ninth Circuit. Indeed, the court's research on this issue has spaded a case where the Ninth Circuit directly refutes the individual rights view of *Emerson*. *See Silveira v. Lockyer,* 312 F.3d 1052, 1061 (9th Cir. 2002). Further, while the court in *Emerson* did rely on another Supreme Court case cited by Sharpe – *United States v. Verdugo-Urquidez,* 494 U.S. 259, 265 (1990) – that reliance was related to more general guidance concerning the Second Amendment and constitutional interpretation generally. A close reading of *Verdugo-Urquidez,* reveals that it does not support Sharpe's position. In short, nothing in law supports the notion that making it a crime for convicted felons to possess firearms is offensive to the Second Amendment. Accordingly, Sharpe's motion should be denied as to ground one.

**B. Ground Two: MOVANT'S CONVICTION WAS THE RESULT OF THE TRIAL JURY'S MISUNDERSTANDING OF WHAT PROOF THE GOVERNMENT HAD TO ESTABLISH TO CONVICT MOVANT OF COUNTS I AND II OF THE INDICTMENT, WHICH WAS THE RESULT OF HIS HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.**

Sharpe submits that the only evidence at trial linking him to this case was a fingerprint purportedly found on a firearm, but that there is no evidence as to when the

fingerprint came to be placed on the firearm and no evidence to establish he possessed the firearm after his underlying felony conviction. The government simply contends that this same issue was raised on direct appeal and decided in the government's favor. Issues previously determined on the merits on direct appeal are barred from re-litigation under 28 U.S.C. § 2255. *Polizzi v. United States,* 550 F.2d 1133, 1135-1136 (9th Cir. 1976). The government misses the mark. Sharpe's arguments do not put him within the ambit of this well established rule. He has couched his claim in the context of ineffective assistance of counsel. The merits of an ineffective assistance of counsel claim may be addressed on direct appeal if the record is sufficiently complete to allow the appellate court to decide the issue. *United States v. O'neal,* 937 F.2d 1369, 1376 (9th Cir. 1990). But the memorandum attached to their judgment reveals that no such claim was considered by the Ninth Circuit. (Docket No. 56). Nonetheless, the claim is readily dispensed with.

Sharpe is presently represented by counsel (Mary Geddes). Based on the hearing had as to Sharpe's third claim and her briefing, it is obvious to the court that Sharpe's attorney has reviewed this case very carefully. The only claim she found warranted a response was Sharpe's third claim (discussed *infra* at page 12).[3] That claim, although alleging ineffective assistance of counsel, was based solely on Sharpe's trial attorney's failure to file a motion to suppress. Additionally, Sharpe has failed to make a showing that even comes close to the standard for ineffectiveness of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 687-688 (1984): that (1) his counsel's performance was not well within the range of professionally reasonable judgments; and, (2) there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceedings would have been different. Contrary to Sharpe's argument, as

---

[3] The third claim – ineffective assistance of counsel – is based on not making a motion to suppress.

the Ninth Circuit discussed in its memorandum attached to the judgment affirming his convictions, there was far more evidence at trial linking him to this case than a fingerprint purportedly found on a firearm. Although there was no evidence as to when the fingerprint came to be placed on the firearm, there was evidence to establish he possessed the firearm after his underlying felony conviction. As the Ninth Circuit concluded: "The jury heard all of the following: Sharpe was the sole renter of the trailer; he paid the bills associated with the trailer; he frequented the trailer (albeit sometimes with others); the weapon sat, loaded, slightly behind the front door of the trailer; and Sharpe's fingerprint was on the weapon." (*See* docket No. 56). Ground two is patently without merit. Therefore, Sharpe's motion should be denied as to ground two.

**C.[4]   Ground Four: MOVANT'S SENTENCE WAS THE RESULT OF THE TRIAL COURT'S DENIAL OF MOVANT'S SIXTH AMENDMENT JURY TRIAL RIGHTS, WHICH WAS THE RESULT OF MOVANT HAVING HAD INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.**

**Ground Five: MOVANT'S CONVICTION AND SENTENCE ARE THE RESULT OF THE ENTRY OF JUDGMENT BY THE DISTRICT COURT THAT THE DISTRICT COURT DID NOT HAVE COMPETENT JURISDICTION TO ENTER, VIOLATING MOVANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.**

Sharpe's counsel briefed only ground five in a single short paragraph (which also incorporated Sharpe's *pro se* arguments), the gist of which is that because he was sentenced after *Apprendi v. New Jersey,* 530 U.S. 466 (2000) his sentence included an unconstitutional sentencing enhancement as an armed career criminal. It was *United States v. Booker,* 543 U.S. 220 (2005) that made such sentencing enhancements unconstitutional. Sharpe acknowledges that he was sentenced after *Booker*, but contends that if his counsel had preserved the issue of the constitutionality

---

[4] For purposes of economy, grounds four and five are considered together.

of his sentencing enhancement *Booker* would have rescued his cause. This is not correct. *Booker* does not apply retroactively and is therefore of no avail to Sharpe. *See United States v. Cruz,* 423 F.3d 1119 (9th Cir. 2005). *Cruz* also makes ground four a hopeless cause. Sharpe's motion should be denied as to grounds four and five.

**D. Ground Three: MOVANT'S CONVICTION, AS TO EACH OF THE COUNTS CHARGED IN THE INDICTMENT, WAS THE RESULT OF EVIDENCE OBTAINED THROUGH AN UNCONSTITUTIONAL SEARCH AND SEIZURE, THE INTRODUCTION AND PRESENTATION AGAINST THE MOVANT HAVING BEEN THE RESULT OF HIS HAVING INEFFECTIVE ASSISTANCE OF COUNSEL FOR HIS DEFENSE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA.**

(This claim was clarified in Sharpe's partial amendment to his motion to the effect that: Upon being summoned to the unoccupied trailer rented by Mr. Sharpe, the police lacked justification for their subsequent warrantless entry and seizure of the shotgun, and trial counsel's failure to bring a motion to suppress regarding these events constituted ineffective assistance of counsel.)

Sharpe submits that the evidence against him was the result of an illegal warrantless search and its fruits. *See Payton v. New York,* 445 U.S. 573, 586-590 (1980). *Wong Sun v. United States,* 371 U.S. 471 (1963). Accordingly, he contends, his trial attorney rendered ineffective assistance of counsel in failing to bring a motion to suppress that evidence. In order for Sharpe to prevail on this claim he must show that: (1) his counsel's performance was not well within the range of professionally reasonable judgments; and, (2) there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 687-688 (1984). In the instant case, either prong requires a showing that a motion to suppress the evidence in question would have been granted. Sharpe has failed to make that showing.

At the hearing on this matter Sharpe called attorney Robert Herz. Herz has extensive experience as a criminal defense attorney, and Sharpe requested that he be accepted as an expert witness. That request was denied, as was a request to take judicial

notice of another case wherein, Sharpe claims, Mr. Bryson was found to be ineffective.[5] Instead, the court allowed Mr. Herz to testify for the sake of judicial economy since his testimony provided an outline as to the theory of Sharpe's claim that Mr. Bryson rendered ineffective assistance of counsel in failing to file a motion to suppress the evidence derived from the search of the trailer. That would include both the initial entry by the police and the subsequent search made pursuant to a search warrant. Incidentally, Herz testimony served as a *de facto* complete proffer of his proposed expert testimony.[6]

Sharpe submits that although Herz was not accepted as an expert witness, "the court did not thereafter limit the admissibility of Mr. Herz's testimony, including his opinions." Herz' opinions are not in evidence. Opinion testimony of a non-expert witness is limited to those opinions or inferences which are (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. Furthermore, Mr. Herz was not accepted as an expert witness pursuant to Fed. R. Evid. 702 because his knowledge was not needed to assist the court. Therefore, there is no basis in law for admitting Herz's opinions.

For the sake of completeness, however, the court reviews the essence of Herz' testimony, and sets forth the reasons why all of his opinions would have been of avail to Sharpe even if they were in evidence. First, Herz made much of the fact that it is common/good practice to file motions to suppress whenever they are colorable if only

---

[5]   The court denied Sharpe's request to take judicial notice of where, Sharpe claims, Mr. Bryson was found to be ineffective. Sharpe's supplemental reply brief generates much heat but no light on this point. The court stands by its ruling because the facts of another case are of no relevance to this case.

[6]  The government's argument that the initial entry and security sweep of the trailer was not a search because the police knew what was inside is specious. A search is a search.

for the purpose of obtaining information about the government's case, and that for this[4] reason alone Mr. Bryson erred in not bringing a motion to suppress. Such a fishing expedition is contrary to proper federal criminal procedure, and the court will not countenance this practice by considering it error when an attorney does not engage in it.

Secondly, a fundamental point of law seems to have been lost on Mr. Herz. He submitted: (1) it was illegal for the landlord to enter Sharpe's trailer; and (2) given their knowledge of the circumstances of that entry the police should not have entered the trailer without an search warrant. In this regard he opined that the terms of the lease made the landlord's entry illegal because it was not covered by the specified emergency circumstances allowing for such entry. He further opined that the proper thing for the plumber to do under the circumstances was to shut-off the water at the main valve under the trailer, and not to go inside. Notably, Sharpe did not call the "plumber" as a witness and his actual qualifications as a "plumber" are not in evidence. Regardless, nothing in the Fourth Amendment requires that plumbers be perfect. Further, assuming Herz was correct in his interpretation of the lease agreement (an area of contract/property law which is a specialty unto itself), it would not bolster his opinion a jot. The police were not obliged to gauge their entry to secure the premises for purposes of officer and public safety due to what may have been an illegal entry by the landlord. Indeed, none of the search of the trailer by the police could be tainted by the conduct of the landlord because the landlord was not acting as a government agent when he entered the trailer. Searches by private individuals are subject to the restrictions of the Fourth Amendment only if the private individual is acting as an instrument or agent of the government at the time of the search. *U.S. v. Reed,* 15 F.3d 928, 931 (9th Cir. 1994). An individual is an instrument or agent of the government if the government knew of and acquiesced in the intrusive conduct, and the party performing the search intended to assist law

enforcement efforts.  *U.S. v. Miller,* 688 F.2d 652, 658 (9th Cir. 1982).  A private person cannot act unilaterally as an agent or instrument of the state, there must be some degree of governmental knowledge and acquiescence, and in the absence thereof a search is not governmental.  *U.S. v. Sherwin,* 539 F.2d 1, 6 (9th Cir. 1976).  Mr. Chojnacki was not acting as a government agent when he entered the trailer to explore the source of the leaking water.  Thus, Herz' opinions are inadmissible and mistaken.

Sharpe also argues that the warrantless search of the trailer which led to the obtainment of the search warrant was illegal.  The cases he relies on are inapposite. For example, his lead case, *Chapman v. United States,* 365 U.S. 610, 612-614 (1961), the officers noticed a strong odor of whiskey mash coming from a rented house and were given permission to enter.  *Chapman*, like the other cases cited by Sharpe, is distinguished on its facts from this case.  This case does not turn on an issue of consent to enter by landlord or tenant prior to or instead of seeking a search warrant. Rather, officers in this case were confronted with circumstances placing an exception to the warrant requirement in play. Specifically, the exigent circumstance of officer and public safety.  While a warrantless search is *per se* illegal unless it falls within an exception to the Fourth Amendment's warrant requirement, and the exception of exigent circumstances exist where a reasonable person would believe that entry into a residence is necessary to prevent physical harm to the officers and other persons.  *U.S. v. Wilson,* 865 F.2d 215, 216 (9th Cir. 1989).  Here, the officers were informed there was a firearm and a marijuana grow in the trailer.  The officers performed their duty in making a loudly announced entry into the trailer and sweeping it to be sure that no one was inside.  The volatile combination of drugs and a firearm was a totality of circumstances justifying the initial warrantless search.  There security sweep was limited to that purpose.  The observations made by the officers and the seizure of any weapons did not exceed the

exigency's scope.[7]  Sharpe's attempts to parse the precise facts as between the somewhat inconsistent memories witnesses (e.g. the door was or was not open and marijuana could or could not be smelled before door was opened) does not save his case.  Taken in their best light, the facts are against him on the question of exigent circumstances..

Next, the court addresses the government's contention that Sharpe's ineffective assistance of counsel claim is barred because he had a full and fair opportunity to litigate the Fourth Amendment claim on direct appeal.  Where there was a full and fair opportunity to litigate a claim on direct appeal it cannot be raised on collateral review.  *Stone v. Powell,* 428 U.S. 465, 469 (1976); *United States v. Hearst,* 638 F.2d 1190, 1196 (9th Cir. 1980).  On this point, Sharpe's counter-argument carries the day.  An exception to the rule of *Stone* is found where a claim of ineffective assistance of counsel includes a claim that trial counsel failed to competently litigate an issue under the Fourth Amendment.  *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986). This is precisely the situation presented in this case.

Lastly, the court explores Sharpe's contention that the government is mistaken in positing that even if there was a defect in the initial search by the police, the government's cause would have been salvaged by the inevitable discovery doctrine. Sharpe is mistaken.

Under the inevitable discovery doctrine otherwise excluded evidence is admitted if the government proves – by a preponderance of the evidence – that the evidence would have been obtained inevitably and, therefore, would have been admitted

---

[7] Additionally, the subsequent accompaniment of the plumber by an officer is of no consequence.  While allowing him into the trailer to deal with the leak was a dubious judgment call, it occurred after the security sweep and the officers had plenty of evidence to secure a search warrant at that point.  Indeed, it could be argued that it was reasonable for the officer to accompany the plumber in order to preserve evidence. Regardless, whatever observations were made, time spent with the plumber appears to have been of no import in seeking and obtaining the search warrant.

regardless of any overreaching by the police. *Nix v. Williams,* 467 U.S. 431, 447 (1984). It is important to bear in mind, however, that evidence obtained as a direct result of an illegal search or seizure may not be used to establish probable cause for a subsequent search. *United States v. Wanless,* 882 F.2d 1459, 1465 (9th Cir. 1989).

In the case at bar, the government contends that prior to entering the trailer the police had enough information to provide probable cause for the warrant they ultimately obtained. In the government's view, what they were told by Chojnacki (not to mention the odor of marijuana) were sufficient. According to Sharpe, the evidence of Chojnacki's statements was not untainted because what he saw and smelled was the result of his illegally opening the door to the trailer and entering it. As discussed *supra*, Chojnacki was not acting as an instrument or agent of the government at the time of the search. *U.S. v. Reed,* 15 F.3d 928, 931 (9th Cir. 1994). *A fortiori*, the evidence derived from Chojnacki's statements was not tainted. The inevitable discovery doctrine applies only when the fact(s) that makes discovery inevitable is born of circumstances other than those brought to light by the illegal search itself. *U.S. v. Reilly,* 224 F.3d 986, 995 (9th Cir. 2000). Assuming the police search was illegal, the Chojnacki's statements would have made the discovery of the evidence inevitable by obtainment of a search warrant. Had the police failed to exercise the opportunity to obtain the warrant the inevitable discovery doctrine would not have applied. *Id.* But they did obtain a warrant, and the doctrine is applicable.

Sharpe continues that the affidavit for the warrant did not inform the issuing magistrate how Chojnacki could identify the sight and smell of marijuana, and that this made his information on its face second-hand knowledge. This argument fogs the issue of the inevitable discovery doctrine with a vague attack on the actual warrant application. It conflates the requirements for establishing probable cause for a search warrant – *See Illinois v. Gates,* 462 U.S. 213, 238 (1983) – with the inevitable

discovery doctrine. This requires conjecture about issues not before the court, and does nothing to advance Sharpe's cause. Suffice it to say that there is no showing that the issuing magistrate abandoned his detached and neutral role, or that the officer was dishonest or reckless in preparing the affidavit in support of the search warrant application, or that the police could not have harbored an objectively reasonable belief in the existence of probable cause. *See United States v. Leon,* 468 U.S. 897, 926 (1984). Finally, Sharpe cites Alaska State cases to attack the warrant. The court is always intrigued by this not uncommon practice, since § 2254 petitions are brought on federal constitutional grounds. State constitutional law is without sway here.

Thus, Sharpe's motion should be denied as to ground three, because he has not satisfied *Strickland* by showing that either: (1) his counsel's performance was not well within the range of professionally reasonable judgments; and, (2) there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland,* 466 U.S. at 687-688. That is to say: (1) there were not grounds for making a motion to suppress, and therefore counsel's failure to do so was not an unreasonable professional judgment; and (2) such a motion would not have resulted in the suppression of evidence.

## CONCLUSION

For the foregoing reasons it is hereby recommended that Sharpe's motion (Docket No. 57, supplemented at No. 59 and partially amended at No. 70) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 be **DENIED**. Given the circumstances of this case, as set forth below the allowance for objections and responses to this recommendation shall be 10 pages instead of the usual 5 pages.

DATED this 12th day of March at Anchorage, Alaska.


                                    /s/ John D. Roberts
                                    JOHN D. ROBERTS
                                    United States Magistrate Judge


        Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **the close of business March 30, 2007**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **ten (10) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **April 13, 2007**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

        Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).