Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff/Respondent,<br><br>vs.<br><br>AARON K. SHARPE,<br><br>　　　　Defendant/Petitioner. | Case No. 3:03-cr-0034-JWS-JDR<br><br>**OBJECTIONS TO INITIAL REPORT AND RECOMMENDATION AT DOCKET 101** |

　　　　Aaron Sharpe had submitted a detailed 26-page brief and 8-page reply on the merits of his petition, with extensive citations to the evidentiary record. The magistrate-judge has issued an initial report and recommendation that Aaron Sharpe's petition for a writ of habeas corpus be denied. Because of the page limitations imposed on Mr. Sharpe, he hereby notifies this court that he continues to rely upon the facts, authorities and arguments previously cited in his pleadings, and would ask for their incorporation as objections.

　　　　Mr. Sharpe does detail the following specifications of error.

**THE "FACTS" PORTION OF THE REPORT AND RECOMMENDATION (RR 2-6)**

| | |
|---|---|
| RR at 2. | Although the search warrant described the residence as a "double-wide" trailer, the photographs clearly show that the trailer was a single only. |
| RR at 3. | The men closed the door behind them when they exited the trailer. |
| RR at 4. | The testimony of Bruce Johnson established that Chognacki gave him and Mary Geddes a very different account of the police entry into the trailer. |
| RR at 4 | Osesik saw the police open the door and enter. |
| RR at 4-5 | Officer Glor testified that he had little recollection of the events of that day, and relied principally on what his police report had said to refresh his recollection. He had reviewed Officer Kwasigroch's rport as well. Officer Kwasigroch was the lead officer and would have spoken to the men. He himself had spoken to none of the men present. His concern that there might be some one inside the trailer was not based on any information specific to this occasion. He had no recollection of smelling marijuana prior to entering the trailer. His report did not include that observation. |
| RR at 5 | Officer Kwasigroch could not say whether he or Officer Glor had arrived first. He did not know who left had opened wide the door to the trailer, he only knew he had been open upon his arrival. His report told him that he could see marijuana, a shotgun and ammunition boxes through the open door. This testimony was contradicted in large part by the testimony of landlord Chognacki, who said that one could only see inside the trailer by climbing to the deck at the top of the stairs to the front door of the house, and could only see inside by extending across the threshold. The photographs admitted into evidence support this claim. |

**THE "DISCUSSION" PERTAINING TO CLAIM THREE**

- **The magistrate erred as a matter of fact and law in determining that Mr. Sharpe had not established that his counsel's performance was not well within the range of professional reasonable judgments.   RR at 18**

- **The magistrate erred as a matter of law in excluding expert testimony, and abused his discretion in not crediting it.   RR at 13.**

By way of background, Robert Herz was offered as an expert witness in the field of criminal defense. In that capacity he opined that, an attorney competent in criminal defense and who had actually reviewed the discovery, should have known that a motion to suppress should have been filed.

The magistrate's views that criminal defense practice is not an area of specialized knowledge and that the admission of testimony has no basis in law, are contradicted by a large number of cases in which such testimony has been germane to a court's determinations as to the prevailing standards of practice. Expert testimony, while not necessary, is sometimes relied upon in determining claims of ineffective assistance of counsel. *See, e.g., Karis v. Calderon*, 283 F.3d 1117, 1133 n. 9 (9th Cir.2002).

A court reviewing an ineffective assistance claim should consider counsel's performance in the context of then " 'prevailing professional norms,' which include consideration of the challenged conduct as seen from not the court's but 'from counsel's perspective at the time.' " Wiggins v. Smith, 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland).

In this case the admission of Herz' testimony was crucial because of Mr. Bryson's own unavailability. Mr. Herz had reviewed the indictment, the warrant, the affidavit supporting the warrant, the police reports provided to Mr. Bryson, and all of Mr. Bryson's files. Like Mr. Bryson

was, Mr. Herz is a solo practitioner admitted to practice in both the state and federal courts. Mr. Herz testified that he had represented defendants and supervised attorneys representing defendants in hundreds of drug grow cases involving state court warrants.

The police reports were submitted only for admission only to establish the basis of Mr. Bryson's knowledge and the basis of Mr. Herz' opinion. The magistrate judge erred in ruling that Mr. Herz' opinions as an expert was inadmissible, and he later erred in ruling the police reports - admitted for this limited purpose, to establish Mr. Bryson's receipt and Mr Herz' opinion - would stand as substantive evidence, substituting for any present recollection.

The magistrate said he would further discredit Mr. Herz' testimony because Mr. Herz said that any colorable motion should be filed because such litigation could develop additional information about the government's case. The magistrate further says that such a practice would be contrary to federal criminal procedure because it would be a fishing expedition. The magistrate misunderstands. Mr. Herz' point was simply this: if the discovery indicates an apparent factual and legal basis for suppression, an attorney should file a motion; it is his obligation to do so. The facts as they are developed at an evidentiary hearing may very well establish that the motion should not be granted. Should that occur, there are incidental benefits that nevertheless accrue: the parties have usually learned more about the case, the witnesses, the evidence, and they are better informed as to whether the case should go to trial. There is no downside in the defense of criminal case in litigating of a motion simply because it might not win.

Furthermore, with respect to <u>this case</u>, which Mr. Herz specifically addressed in great detail, the discovery indicated a warrantless search of a rented trailer by the police, without the renter's consent, and in the absence of any qualifiying exigent circumstances. The Fourth Amendment

4

prohibits officers from entering and searching a residence without first obtaining a warrant. United States v. Cervantes, 219 F.3d 882, 887 (9th Cir.2000).

It is the government- not the defendant - that bears the burden of production in demonstrating that a warrantless search meets the parameters of one of a few "rigorously guarded" exceptions to the warrant requirement. United States v. Carbajal, 956 F.2d 924, 930 (9th Cir.1992). See also United States v. Stafford, 416 F.3d 1068,1073-74 (9th Cir. 2005).

On the face of this discovery, then, and the allocation of the burdens concerning a motion to suppress for a warrantless search, Mr. Bryson's failures to reasonably perform his duties were sufficiently established. Not only has the court erred in excluding expert testimony on this issue, i.e. a defense counsel's obligations, but the court has erred as a matter of fact and law in determining that Mr. Bryson's complete failures in this case (to investigate legal and factual bases for suppression and file a motion) were reasonable.  (See discussion in Pet. Reply Br at 4).

There was no evidence that Mr. Bryson had exercised a reasonable professional judgment here; his files were devoid of any indication that judgment had been exercised at all.

- **The magistrate erred, as a matter of law and fact, in stating that "The police were not obliged to gauge their entry to secure the premises for purposes of officer and public safety due to what may have been an illegal entry by the landlord." R& R at 14.**

Mr. Sharpe disagrees, and offers some clarification.

First, the police are of course trained and required to know whether they, themselves, have legal authority to act. The police can and should have been assumed to have knowledge of the following relevant facts in this case. The trailer was a rental unit, the renter had not been reached and had not agreed to the entry, no one was home and the landlord had used a locksmith to open the

door and gain access because the tenant had a new lock on the door and hadn't given the landlord a key. Q.E.D.: the tenant didn't want the landlord to enter. These facts should have informed the police that they lacked consent to enter. Mr. Sharpe disagrees that there was any exigency here which otherwise would have permitted them to enter the trailer without a warrant.

Second, Mr. Sharpe has never contended that Mr. Chognacki was acted as an agent of the police when he decided to investigate the water leak and initially entered.

Third, Mr. Sharpe would assert that Chognacki, the landlord, did act as an agent of the police assuming that Mr. Chognacki did ask the police if they wanted to look inside and if they answered, or acted, in the affirmative, and assuming that he opened the door or otherwise facilitated the entry of the police so they could look or go inside. According to Bruce Johnson, Chognacki told him he opened the door for the police for they could look inside. According to both Chognacki and Oseik, the trailer door had been closed at the time the police arrived. According to Oseik, the police opened the door and let themselves into the trailer shortly after they arrived on the scene.

- **The magistrate errs, as a matter of fact and law, in his conclusion that the warrantless entry was excused by exigent circumstances, i.e. "officer and public safety.". RR at 15-16.**

Without cited authority, the magistrate nevertheless relies upon the "volatility of drugs and a firearm" for a "totality of circumstances" justifying the entry.[1] RR at 15. The magistrate has concluded that, upon being notified that there is a firearm and marijuana inside of a housing unit, the

---

[1] The undersigned assumes that the court is not suggesting a chemical volatility since there was no such evidence.

police have an obligation to enter the trailer to conduct a "protective sweep."

There are several problems with this analysis.

A protective sweep itself is not an exigency. A protective sweep is a police procedure that coincides with the arrest of a person pursuant to a warrant. Maryland v. Buie, 494 U.S. 325, 110 S.Ct. 1093 (1990). In this case, there was no warrant for arrest or to search.

Alternatively, there was no reasonable basis to believe that anyone was inside. While it goes without saying that police are not presumed to know the terms of a rental lease, the police in this case knew much: this was a rental unit, the tenant was not home and had not been yet contacted, the landlord had forcibly entered the premises without the knowledge or consent of the tenant, and no injury or imminent danger to any person had been reported. Being so advised, the police had no reasonable basis for believing that they could lawfully conduct any inspection or search the interior of the unit without a warrant.[2]

It is a "heavy burden" that the government bears when trying to prove exigent circumstances. *See United States v. Howard*, 828 F.2d 552, 555 (9th Cir. 1987) *citing United States v. Licata*, 761 F.2d 537, 543 (9th Cir. 1985). To prove that exigent circumstances existed, the government cannot rely on "speculation about what may or might have happened." *See Howard*, 828 F.2d at 555. In other words, it cannot rely on the possibility of a problem. Instead, it must point to "specific and

---

[2]The evidence established that the trailer park manager and/or his employees had been at the single-wide trailer <u>for hours</u>. They had yelled and called and knocked on exterior surfaces of the trailer with the purpose of rousing anyone possibly inside, and got no response. They observed there was no car in the parking space next to the trailer. They had a locksmith work on the front door lock, and open the door, and got no response. Three men entered at least the first room, the kitchen, and got no response.

7

articulable facts which, taken together with rational inferences . . ., support the warrantless intrusion."
*Id.*

There is no exigency created by the location of a firearm inside of a trailer. The magistrate has called the combined presence of a firearm with drugs as "volatile," but that hyperbole presupposes the presence of an actor, and there was none here.

- **Mr. Sharpe also takes exception to the factual findings by the magistrate-judge 's comment at RR at 15-16., i.e. that the police officers' entry was limited to the purpose of a protective sweep. RR at 16.**

The magistrate has concluded that a "protective sweep" was limited to ensuring that no one was inside the trailer. That determination is disputed. First, there was undisputed testimony that the police officers spent time inside the trailer while trailer park employees inspected the plumbing. The officers seized evidence, i.e. the shotgun. Finally the police also developed evidence while they were inside, taking photographs of the interior and exterior of the trail <u>before</u> Officer Kwasigroch ever left the trailer to obtain a warrant.

- **With respect to the magistrate's discussion of inevitable discovery, the petitioner objects as a matter of fact and as a matter of law**.

Mr. Sharpe has established that the probable cause statement in this case is wholly contained in Officer Kwasigroch's affidavit submitted along with his search warrant application. Mr. Sharpe has also established that the vast majority of statements in the affidavit recount observations made in course of Officer Kwasigroch's warrantless, unjustified entry into the trailer, and they must be redacted as fruit of the poisonous tree. If Mr. Sharpe is correct, the only information remaining in the search warrant affidavit is that attributed to landlord Chognacki. However, this untainted

information, as it is written, would not suffice to establish probable cause, for reasons detailed in her merit brief at Pet. Br 22-25.

The magistrate is mistaken when he says that Sharpe contends Chognacki's statements were tainted by his illegal entry. RR at 17. <u>The undersigned has never argued this</u>. Sharpe has only contended that Chognacki's information about his initial entry, <u>as recounted in the search warrant affidavit</u>, did not suffice to establish probable cause by itself.

It does not matter that the police could have developed a sufficiently detailed description of Mr. Chognacki's observations, thereby satisfying the probable cause requirement for a warrant. Nor does it matter that the police could have could have chosen to bring Mr. Chognacki down to the station to testify, or put him on the telephone to testify, thereby satisfying probable cause requirements. They simply did not do any of those things. In *United States v. Reilly*, 224 F.3d 986 (9th Cir. 2000), the circuit court instructed that, even when the police could have presented sufficient facts untainted by an illegal search to a magistrate but failed to do so, the inevitable discovery exception will not be applied. See also *United States v. Echegoyen*, 799 F.2d 1271, 1280 n.7 (9th Cir. 1986).

**Conclusion**

Although the magistrate criticizes this counsel for straying afield of the issues before the court (RR at 18) in evaluating the sufficiency of the untainted information remaining in the search warrant, Mr. Sharpe disagrees that there has been any digression from the very type of analysis necessary for this motion.

With or without the expert testimony of Robert Herz, Mr. Sharpe has established that his former attorney - who was retained without limitation to represent him during the pretrial and trial

phases of his case - received discovery indicating there had been a warrantless entry, search and seizure of evidence leading to his arrest. Because the burden of establishing exigent circumstances falls on the government, Mr. Bryson should have filed a motion to suppress the evidence. He did not do so.

Would the motion have succeeded? Yes. It would have succeeded because there were no exceptions to the search warrant requirement (consent, exigency, or plain view/smell) or the exclusionary rule that saved this search.

Dated this 3rd day of April, 2007.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on April 3, 2007, a copy of the
foregoing document was
served electronically on:

Crandon Randell

/s/ Mary C. Geddes